275 Neb. 503
CHAD A. HOFFERBER, APPELLANT,
v.
CITY OF HASTINGS, NEBRASKA, ET AL., APPELLEES.
No. S-06-1349.
Supreme Court of Nebraska.
Filed April 18, 2008.
Dirk V. Block and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.
William T. Wright and Loralea Frank, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellee City of Hastings.
Cathy S. Trent-Vilim, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Lavina Kramer.
Robert S. Lannin and Patrick M. Driver, of Shively Law Offices, P.C., L.L.O., for appellee Evalin Kleinjan.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Chad A. Hofferber, an employee of Hastings Utilities, was injured while attempting to read watermeters serving residential properties owned by Evalin Kleinjan and Lavina Kramer. After receiving workers' compensation benefits, Hofferber brought an action against the City of Hastings (City), Kleinjan, and Kramer, alleging that the negligence of each was a proximate cause of his injury and damages. In granting each defendant's motion for summary judgment, the district court for Adams County determined that Hofferber's claim against the City was barred by the exclusive remedy provisions of the Nebraska Workers' Compensation Act[1] and that Kleinjan and Kramer owed no duty of care to Hofferber. We affirm the judgments entered in favor of the City and Kramer, but reverse the judgment in favor of Kleinjan and remand for further proceedings.

BACKGROUND
The record in this case discloses certain uncontroverted facts. The City, located in Adams County, is a city of the first class and a political subdivision of the State of Nebraska. Its mayor and city council are authorized by Nebraska law to establish and maintain various utilities, including waterworks.[2] The mayor and city council may "by ordinance confer upon the board of public works the active direction and supervision of such system of waterworks" and may empower the board to "employ necessary laborers and clerks."[3] Pursuant to this statutory authority, the City has enacted ordinances creating a board of public works charged with "the active direction and supervision of the plants and systems of waterworks" and other public works.[4] The board consists of five residents of the City "appointed by the Mayor by and with the assent of the Council."[5]
Hastings Utilities includes all employees associated with the operation of municipal natural gas, water, electrical, and sewer systems. It is under the supervision of a manager appointed by the board of public works pursuant to city ordinance.[6] The budget of the board of public works and the utility rates which it establishes are subject to the approval of the Hastings City Council. As a municipal utility which generates its own revenue, Hastings Utilities is required by Nebraska law to be audited separately from other functions of the municipality.[7] Audit reports for 2000 through 2005 identified Hastings Utilities as a "component unit of the City."
The City's personnel department functions as the initial contact for all applicants for employment by the City, including persons applying for employment with Hastings Utilities. The manager of Hastings Utilities is authorized to appoint employees within Hastings Utilities, but is required to notify the Hastings Civil Service Commission of all such appointments and changes in employment status. All employees of Hastings Utilities are considered employees of an agency or department of the City and, therefore, employees of the City. A workers' compensation insurance policy issued to the City and in effect on the date of Hofferber's injury included coverage for claims by Hastings Utilities employees.
Hofferber submitted an application for employment to the City's personnel department on July 1, 1999. On August 27, the manager of Hastings Utilities sent written notice to the Hastings Civil Service Commission that he had appointed Hofferber to a "Pipefitter Apprentice" position in the "Utilities (Gas) Department." Hofferber subsequently signed a document indicating that he was employed by the "Hastings Utilities Department in the Hastings City Service" and acknowledging receipt of personnel rules and regulations adopted by the Hastings City Council. In July 2000, the manager of Hastings Utilities notified the Hastings Civil Service Commission that he was transferring Hofferber from the job classification of "Pipefitter Apprentice" to that of "Meter Reader I."
On October 3, 2000, Hofferber was attempting to read watermeters located in an underground pit located on residential property in Hastings. Although the meters served both the Kleinjan residence and the adjoining Kramer residence, the meter pit and its manhole cover were located entirely on the Kleinjan property. Hofferber claims that when he stepped on the manhole cover, it opened into the chamber, causing him to "drop into the hole where he landed on his groin area on the edge of the manhole cover." Hofferber subsequently filed an action against Hastings Utilities in the Nebraska Workers' Compensation Court, alleging that he was injured while in the course of his employment and was entitled to workers' compensation benefits. Hastings Utilities filed an answer in which it admitted that Hofferber's injuries were sustained in an accident arising out of and in the course of his employment and alleged that it had made payment for medical, surgical, and hospital expenses and other workers' compensation benefits to which Hofferber was entitled. The final disposition of the workers' compensation action is not apparent from the record.
Hofferber brought this action against the City under the Political Subdivisions Tort Claims Act.[8] He alleged that the City had a duty to maintain the underground chamber and manhole cover and negligently failed to do so. He joined Kleinjan and Kramer as defendants, alleging that they also had a duty to maintain the underground chamber and manhole cover, that they knew or should have known that the manhole cover was unsafe, and that they negligently maintained the underground chamber and manhole cover so as to create an unreasonably dangerous condition. Hofferber alleged that the named defendants were jointly and severally liable for the special and general damages he incurred as a result of his injury.
The City filed an answer which included a general denial, an affirmative allegation that the claim was barred by the exclusive remedy provisions of the Nebraska Workers' Compensation Act,[9] and an affirmative allegation that it retained sovereign immunity under specific exemptions of the Political Subdivisions Tort Claims Act.[10] It also alleged that pursuant to a city ordinance, the duty to maintain the meter pit was solely that of the consumer, and that Hofferber's injuries were proximately caused by his own contributory negligence. Kleinjan and Kramer filed answers denying any negligence on their part and alleging contributory negligence.
In an order entered on February 16, 2006, the district court granted motions for summary judgment filed by the City and Kramer. It concluded that Hastings Utilities was a component or department of the City and that therefore, Hofferber's claim was barred by the exclusive remedy provisions of the Nebraska Workers' Compensation Act[11] and the exemption in the Political Subdivisions Tort Claims Act for workers' compensation claims.[12] The court further determined that Kramer had no duty to inspect or maintain the meter pit because (1) it was situated on a utility easement belonging to a public utility and (2) it was not located on her property. Hofferber attempted to appeal from this order, but the Court of Appeals dismissed the appeal because the record did not show a full disposition of all claims of all parties.[13]
In an order entered on October 31, 2006, the district court granted Kleinjan's motion for summary judgment, reasoning that although the meter pit was located on her property, she had no right to exercise control over the manhole cover because it was situated within a utility easement, and that therefore, she owed no duty to Hofferber.
Hofferber perfected a timely appeal from the order dismissing his claim against Kleinjan and the prior order dismissing his claims against the City and Kramer. We moved the appeal to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[14]

ASSIGNMENT OF ERROR
Hofferber assigns, restated, that the district court erred in granting summary judgment to the City, Kleinjan, and Kramer.

STANDARD OF REVIEW
[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[15] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[16]

ANALYSIS

CITY OF HASTINGS
[3] In concluding that the Nebraska Workers' Compensation Act constituted Hofferber's exclusive remedy against the City, the district court relied upon § 48-148, which provides in pertinent part:
If any employee . . . of any employer subject to the Nebraska Workers' compensation Act files any claim with, or accepts any payment from such employer, or from any insurance company carrying such risk, on account of personal injury, or makes any agreement, or submits any question to the Nebraska Workers' Compensation Court under such act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury.
Based upon this provision and §§ 48-111 and 48-112, we have held that if an injury arises out of and in the course of employment, the Nebraska Workers' Compensation Act is the injured employee's exclusive remedy against his or her employer)[17] Because the City is a political subdivision, § 13-910(8) is also pertinent to our inquiry. This statute states that the Political Subdivisions Tort Claims Act does not apply to lalny claim by an employee of the political subdivision which is covered by the Nebraska Workers' Compensation Act."[18]
It is undisputed that Hofferber's accidental injury arose out of and in the course of his employment with Hastings Utilities and that he brought a claim against Hastings Utilities under the Nebraska Workers' Compensation Act. The question is whether these facts necessarily bar his tort claim against the City. Hofferber's argument that he may proceed against the City is based upon the following general principle:
A parent corporation is generally not immune from an action in tort by an injured employee of its subsidiary by virtue of the employee's entitlement to workers' compensation. Where an employee of a subsidiary is injured while working on property owned by the parent corporation and receives workers' compensation benefits from the subsidiary, the employee may maintain an action in tort against the parent corporation even though parent and subsidiary are covered by [the] same policy of workers' compensation insurance.[19]
This court has never addressed this principle, but Hofferber urges that we should adopt it here and apply it here by treating the City and Hastings Utilities as separate entities analogous to a parent and subsidiary corporation. In this regard, Hofferber relies primarily on Turner v. Richmond Power and Light Co.,[20] in which a divided panel of an Indiana appellate court held that because a municipally-owned electrical utility operated as a "'discrete business enterprise" from the city with "little `functional integration,"[21] a city employee who was injured by a powerline and received workers' compensation benefits could maintain a negligence action against the utility. In reaching its conclusion, the court noted that the utility maintained its own budget and had its own financial officer whose decisions were binding upon the city. The court further noted that the utility conducted its legal affairs and maintained certain insurance coverage separately and distinctly from the city and that the utility's hiring, training, and firing process was independent of the city's. A dissenting member of the panel concluded that the relationship between the city and the utility was more analogous "to the relationship between different branches of the same governmental unit."[22]
Hofferber argues that although Hastings Utilities is owned by the City, when the City engages in utility services it does so in its proprietary, rather than governmental, capacity.[23] Hofferber contends that because of this, "the utility becomes more like a private entity and separate and distinct from the City."[24] He notes that the board of public works is not composed of members of the Hastings City Council and that a "'Manager of Utilities'" has the right to hire and fire employees.[25] Also, he notes, the board of public works may obtain and pay for technical or professional services, make its own rules and regulations, and purchase materials and supplies. Hofferber argues that Hastings Utilities' funds are maintained separately from those of the City, that it generates its own revenue, and that it is audited separately from the City.
On the record before us, we need not decide whether a parent corporation is immune from a tort action by an injured employee of its subsidiary by virtue of the employee's entitlement to workers' compensation. Assuming without deciding that such an action would be allowed, we do not view the relationship between the City and Hastings Utilities as analogous to that of a parent corporation and its subsidiary. The record conclusively establishes that the City and Hastings Utilities are not separate entities, but, rather, that Hastings Utilities is an agency or department of the City. Although Hastings Utilities has specific proprietary responsibilities, it is functionally integrated with city government. Hastings Utilities employees are employees of the City subject to the same rules and regulations as other employees of the City. Hastings Utilities utilizes the City's personnel department, which maintains the records of Hastings Utilities' employees. Its budget and rates are subject to the approval of the Hastings City Council. Hastings Utilities is insured under the City's workers' compensation insurance policy. The fact that Hastings Utilities is audited separately is due to a requirement of state law and is not indicative of a separate corporate existence. The record does not reflect that the manager of Hastings Utilities has powers or responsibilities materially different from those of other department heads of the City. We therefore conclude that the district court did not err in determining as a matter of law that Hofferber's tort claim against the City was barred by the exclusive remedy provisions of the Nebraska Workers' Compensation Act[26] and the corresponding exemption in the Political Subdivisions Tort Claims Act.[27]

RESIDENTIAL PROPERTY OWNERS
[4] Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case.[28] The district court held that Kramer had no duty to maintain the meter pit because it was situated on a utility easement belonging to a public utility and because it was not located on Kramer's property. Although it found that the pit was situated on Kleinjan's property, the district court held that Kleinjan had no duty to maintain it because she had no right or authority to exercise control over the manhole cover.
The district court relied upon this court's decision in Harms v. City of Beatrice[29] in concluding that neither property owner owed a duty. In that case, a pedestrian was injured when she fell through the defective cover on a meter box located on a service line which connected the city's water system with private property. The meter box was "between the sidewalk and the lot line, a part of the area occupied as a street,"[30] but there is no indication as to whether it was situated in a utility easement. The meter box, including its ring and cover, was purchased by the city and furnished to the property owner at cost. The sole issue presented in Harms was whether the city had a duty to keep the meter box in repair, given the fact that the property owner was required to pay the cost of materials and installation. This court held that the city could not "delegate the duty it owes the public to maintain the water-works system in a safe condition"[31] and therefore concluded that the petition stated a cause of action against the city. The case did not address the question of whether the property owner served by the meter box would also have a duty to keep the meter box in good repair.
Subsequently, in Crosswhite v. City of Lincoln,[32] we considered the question of whether a city and property owner could be jointly liable for an injury caused by public utility equipment. In that case, a pedestrian tripped on a "stop box" which protruded above the concrete surface of a public sidewalk.[33] The stop box was part of a municipal water system. Ordinances required the property owner to install the stop box and keep it in good repair at the property owner's expense. Other city ordinances required that sidewalks be kept free of obstructions. Relying on Harms, this court held that the city could not delegate the duty it owed to the public to keep its water system in good repair. But because the stop box and the water system of which it was a part benefited the property owner and the stop box's placement within a public sidewalk served "a use independent of and apart from the ordinary and customary use for which sidewalks are designed,"[34] this court concluded that both the city and the property owner owed an independent "duty to the traveling public to maintain the stop box in a reasonably safe condition."[35] We held that
where persons are injured by a dangerous sidewalk condition created and maintained subject to the joint control of the city and an abutting landowner, and where the condition is maintained for the benefit of a proprietary business operated by the city, and is also for the benefit of the property of the abutting landowner, the city and the abutting landowner are joint or concurrent tort-feasors and each is directly liable for his own wrong.[36]
Neither Harms nor Crosswhite addresses the question of whether a utility customer may be liable to an employee of the utility for injury caused by a component of the utility which is situated on the private property of the consumer. A more pertinent case is Fitzpatrick v. U S West, Inc.,[37] in which an employee of an electrical utility was injured by an explosion in an underground vault where she was working. The vault was situated on private property, but the owner of the property had given the utility an easement to build, maintain, and repair the vault. All of the equipment located within the vault was owned by the utility. The injured utility employee brought an action against the property owner, alleging negligence and strict liability. Focusing on the question of control, we held that the property owner owed no duty to the utility company employee because it had no right or opportunity to control the employee's work activities within the vault.
Kleinjan and Kramer argue that Fitzpatrick supports the district court's determination that they owed no duty to maintain the meter pit because it was situated in a utility easement. However, our review of the record discloses no utility easement granted to the City or Hastings Utilities. In support of Kleinjan's motion for summary judgment, her attorney offered an exhibit identified as the "operative deed" by which Kleinjan obtained title to her property and two other exhibits which were identified as "copies of deeds . . . which established the easement in question." The latter two exhibits are 1919 deeds from "J.O. Rohrer" to "George B. Blackstone" and "Floyde H. Eldredge" which purport to convey the property now owned by Kleinjan and adjacent property located immediately to the north, subject to a common driveway easement. The Eldredge deed recites, "Common and perpetual rights and privileges also granted and reserved hereby to and for the use of the water and sewer service to the main," and the Blackstone deed refers to the "common sewer and water privileges" referred to in the Eldredge deed. While these documents reflect rights shared by adjoining landowners, neither conveys an easement to the City or any municipal utility. From this record, we cannot determine whether or not the meter pit was situated on a utility easement belonging to a public utility.
In its discussion of such easement, the district court noted that by ordinance, the duty to maintain watermeters "is the obligation of the City." But we note that a city ordinance also provides that meter pits are to be "kept in good repair and free of water, oil, grease and trash at the consumer's own cost and expense."[38] Hofferber's injury was caused not by the meters, but, rather, by the cover on the pit which contained the meters.
[5] We conclude that the existence of a duty on the part of Kleinjan and Kramer depends upon their knowledge and control with respect to the apparently defective manhole cover which caused Hofferber's injury. As one commentator notes, "the person in possession of property ordinarily is in the best position to discover and control its dangers, and often is responsible for creating them in the first place."[39] And we have recognized the general rule that "[o]rdinarily a person who is not the owner and is not in control of property is not liable for negligence with respect to such property."[40] The record includes evidence that the meter pit was not located on Kramer's property and that for at least 15 years prior to Hofferber's accident, she did not exercise any form of control over the meter pit or its cover. Based upon these uncontroverted facts, we conclude that Kramer owed no duty to Hofferber and that the district court did not err in entering summary judgment in her favor.
[6,7] It is likewise uncontroverted that the meter pit was situated on, and the accident occurred on, property owned by Kleinjan. A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the defendant should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.[41] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.[42] Giving Hofferber the benefit of all favorable inferences as our standard of review requires, we conclude that Kleinjan did not make a prima facie showing sufficient to negate her potential liability for injury caused by a dangerous condition on her property so as to entitle her to judgment as a matter of law. Accordingly, we conclude that the district court erred in sustaining her motion for summary judgment, and we reverse, and remand for further proceedings as to this claim.

CONCLUSION
For the reasons discussed, we conclude that Hofferber's claim against the City is barred by the exclusive remedy provisions of the Nebraska Workers' Compensation Act and the corresponding exemption in the Political Subdivisions Tort Claims Act, and we affirm the judgment dismissing his claim against the City. We also affirm the entry of summary judgment in favor of Kramer, because the record reflects no genuine issue of material fact as to Hofferber's claim against her and she is therefore entitled to judgment of dismissal as a matter of law. However, we conclude that Kleinjan did not make a prima facie showing that she was entitled to summary judgment, and we therefore reverse the judgment entered in her favor and remand the cause to the district court for further proceedings consistent with this opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Neb. Rev. Stat. §§ 48-101 through 48-1,117 (Reissue 1998 & Cum. Supp. 2002).
[2] See Neb. Rev. Stat. § 16-674 (Cum. Supp. 2006).
[3] Neb. Rev. Stat. § 16-691 (Reissue 1997).
[4] Hastings Mun. Code, ch. 32, art. I, §§ 32-101 and 32-104 (1973).
[5] Hastings Mun. Code, ch. 32, art. I, § 32-102 (1973).
[6] See Hastings Mun. Code, ch. 32, art. I, § 32-109 (1973).
[7] Neb. Rev. Stat. § 19-2903 (Cum. Supp. 2006).
[8] Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997 & Cum. Supp. 2002).
[9] See §§ 48-111, 48-112, and 48-148.
[10] See § 13-910(2), (3), and (8).
[11] §§ 48-111, 48-112, and 48-148.
[12] § 13-910(8).
[13] See Neb. Rev. Stat. § 25-1315 (Cum. Supp. 2006).
[14] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).
[15] Fokken v. Steichen, 274 Neb. 743, 744 N.W.2d 34 (2008).
[16] Id.
[17] Bennett v. Saint Elizabeth Health Sys., 273 Neb. 300, 729 N.W.2d 80 (2007). See, also, Skinner v. Ogallala Pub. Sch. Dist. No. 1, 262 Neb. 387, 631 N.W.2d 510 (2001); Muller v. Tri-State Ins. Co., 252 Neb. 1, 560 N.W.2d 130 (1997).
[18] § 13-910(8).
[19] 82 Am. Jur. 2d Workers' Compensation § 90 at 102 (2003). See 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 112.01 (rev. ed. 2007).
[20] Turner v. Richmond Power and Light Co., 756 N.E.2d 547 (Ind. App. 2001).
[21] Id. at 558.
[22] Id. at 560 (Mattingly-May, Judge, dissenting).
[23] See Burger v. City of Beatrice, 181 Neb. 213, 218, 147 N.W.2d 784, 789 (1967) ("[w]hen [a city] assumes the status of a private utility company in the production and distribution of water for the benefit of the inhabitants of the city, it subjects itself to the same rights and liabilities of a private water company").
[24] Brief for appellant at 11.
[25] Id. at 12.
[26] §§ 48-111, 48-112, and 48-148.
[27] § 13-910(8).
[28] Eastlick v. Lueder Constr. Co., 274 Neb. 467, 741 N.W.2d 628 (2007); Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[29] Harms v. City of Beatrice, 142 Neb. 219, 5 N.W.2d 287 (1942).
[30] Id. at 220, 5 N.W.2d at 288.
[31] Id. at 223, 5 N.W.2d at 289.
[32] Crosswhite v. City of Lincoln, 185 Neb. 331, 175 N.W.2d 908 (1970).
[33] Id. at 333, 175 N.W.2d at 910.
[34] Id. at 335, 175 N.W.2d at 911.
[35] Id. at 336, 175 N.W.2d at 911.
[36] Id.
[37] Fitzpatrick v. U S West, Inc., 246 Neb. 225, 518 N.W.2d 107 (1994).
[38] Hastings Mun. Code, ch. 32, art. VI, § 32-604 (1973).
[39] W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 57 at 386 (5th ed. 1984). Accord Kliewer v. Wall Constr. Co., 229 Neb. 867, 429 N.W.2d 373 (1988).
[40] 65 C.J.S. Negligence § 94 at 1051 (1966). Accord, Muckey v. Dittoe, 235 Neb. 250, 454 N.W.2d 682 (1990); Kliewer v. Wall Constr. Co., supra note 39.
[41] Range v. Abbott Sports Complex, 269 Neb. 281, 691 N.W.2d 525 (2005); Herrera v. Fleming Cos., 265 Neb. 118, 655 N.W.2d 378 (2003).
[42] Malolepsy v. State, 273 Neb. 313, 729 N.W.2d 669 (2007); Dutton-Lainson Co. v. Continental Ins. Co., 271 Neb. 810, 716 N.W.2d 87 (2006).