752 N.W.2d 555 (2008)
276 Neb. 102
Todd THROWER, appellant,
v.
Jeremy ANSON and the Progressive Corporation, an Ohio corporation doing business as Progressive Northern Insurance Company, appellees.
No. S-07-566.
Supreme Court of Nebraska.
July 11, 2008.
*557 Terry M. Anderson and Melany S. Chesterman, of Hauptman, O'Brien, Wolf & Lathrop, P.C., Omaha, for appellant.
Rex A. Rezac and Todd C. Kinney, of Fraser Stryker, P.C., L.L.O., for appellee Jeremy Anson.
Thomas M. Locher and Michelle Epstein, of Locher, Pavelka, Dostal, Braddy *558 & Hammes, L.L.C., Omaha, for appellee Progressive Corporation, doing business as Progressive Northern Insurance Company.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
This matter has its origins in an automobile accident that occurred on October 31, 2003. Todd Thrower, who had underinsured coverage with the Progressive Corporation (Progressive), was injured and settled with Jeremy Anson, who had liability coverage with State Farm Insurance Company (State Farm), which agreed to pay policy limits in exchange for a complete release. After Thrower executed the release, Progressive denied Thrower's claim for underinsured motorist benefits.
Thrower filed suit in the district court for Sarpy County against Anson and Progressive. Upon cross-motions for summary judgment filed by all parties, the district court concluded that the release of Anson was valid and enforceable and that Progressive did not have to provide underinsured coverage. The district court sustained Anson's and Progressive's motions, denied Thrower's motion, and dismissed Thrower's complaint. Thrower appeals.
We conclude that the release is unambiguous, valid, and enforceable, and that as a result of the release, Thrower discharged Anson from liability relative to the accident. We further conclude that because Progressive failed to carry its burden of showing that Thrower's release of Anson "adversely affected" its subrogation right as required under Neb.Rev.Stat. § 44-6413(l)(a) (Reissue 2004), it was not entitled to summary judgment. We therefore affirm the district court's order in part, and in part reverse and remand the cause for further proceedings.

STATEMENT OF FACTS
On October 31, 2003, a vehicle driven by Thrower was struck from behind by a vehicle driven by Anson, and Thrower was injured. At the time of the accident, Anson had an automobile insurance policy with State Farm that had a liability limit of $25,000. Thrower had an automobile insurance policy with Progressive that included underinsured motorist coverage.
In June 2004, Thrower hired legal counsel to represent him in a claim against Anson for the damages he sustained as a result of the accident. On or about November 15, 2005, a State Farm representative offered to pay the policy limits of $25,000 in exchange for Thrower's release of claims against Anson. On November 16, Thrower's counsel provided Progressive with notice under Neb.Rev.Stat. § 44-6412(2) (Reissue 2004), advising Progressive of State Farm's settlement offer and notifying Progressive that, in accordance with the statute, it "ha[d] thirty (30) days from the receipt of this correspondence within which to substitute its funds if it wishe[d] to preserve its subrogation claim." In the letter, Thrower advised Progressive of his intent to pursue an underinsured motorist claim under his insurance policy. The letter was not in conformity with the statute, in that it was not sent by certified mail and did not contain a signed authorization from Thrower allowing Progressive to obtain his medical records.
On November 17, 2005, 1 day after sending the notification letter to Progressive, Thrower's counsel obtained a release form from State Farm and forwarded it to Thrower and his wife for their signatures. Under the terms of the release, Thrower,

*559 [f]or the Sole Consideration of Twenty five thousand and 00/100 ($25,000.00) Dollars . . . release[d] and forever discharge[d] . . . Anson[,] his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or, who might be claimed to be liable, none of whom admit any liability to [Thrower] but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 31st day of October . . . 2003.
Thrower and his wife executed the release on or about December 4, 2005, and their signatures were witnessed by Thrower's counsel. In a letter dated December 5, 2005, Thrower's counsel forwarded the signed release to State Farm, stating, "Enclosed please find the executed release signed by [Thrower and his wife]. I look forward to receiving the settlement check in the very near future." Thrower's counsel received the settlement check from State Farm on or about December 10.
On December 15, 2005, 2 days prior to the expiration of the § 44-6412 30-day period, Thrower's counsel received a letter from Progressive stating that Progressive intended to substitute its funds for the settlement offered by State Farm and to pursue its subrogation rights against Anson. A substitution check in the amount of $25,000 was also delivered by Progressive on December 15. Shortly thereafter, Progressive learned that Thrower had executed and returned the release to State Farm prior to the expiration of Progressive's 30-day response period and that State Farm intended to rely upon the release. On January 6, 2006, Progressive notified Thrower that in view of the fact that Thrower had executed the release, Progressive was "unable to provide any Underinsured Motorist Coverage for you as a result of the [October 31, 2003] accident, since you eliminated and prejudiced Progressive['s] right of recovery."
Thrower filed suit in the district court against Anson and Progressive. In his amended complaint, Thrower alleged that Anson was liable to him in negligence for injuries Thrower had received as a result of the October 31, 2003, accident. As to Progressive, Thrower effectively alleged that as a result of the accident, Progressive was liable to him for underinsured motorist benefits. Anson's answer denied that he was liable to Thrower and effectively alleged that Thrower's claims were barred by the release. Progressive's answer denied Thrower's claims and alleged as part of its affirmative defense that Thrower's release "adversely affected and harmed Progressive's rights in that [Thrower] has destroyed Progressive's . . . right to subrogation and right of recovery against . . . Anson."
On November 15, 2006, Thrower filed a motion for partial summary judgment, seeking the dismissal "of any and all defenses of [Anson and Progressive] based on the [release]." On March 8, 2007, Progressive filed a cross-motion for summary judgment based upon its affirmative defense alleging that its subrogation rights had been destroyed and that it was not liable on the underinsured provisions of the policy. On March 9, Anson filed a motion seeking enforcement of the release and dismissal of Thrower's claims against him.
The motions came on for an evidentiary hearing on March 19, 2007. During the hearing, the district court ruled without objection that it would treat Anson's motion as a motion for summary judgment. *560 On April 23, the district court filed an order in which it determined that the release was valid and enforceable and that as a result of the release, Thrower's claim against Anson should be dismissed. With regard to Thrower's claim for underinsured motorist coverage under his Progressive policy, the district court agreed with Progressive that, as provided for in § 44-6413(1)(a), Thrower's execution of the release "adversely affected" Progressive's rights by extinguishing Progressive's right of subrogation and recovery against Anson and that as a result, Thrower was not entitled to underinsured motorist coverage under his Progressive policy. The district court denied Thrower's motion for partial summary judgment, granted Anson's and Progressive's motions for summary judgment, and dismissed Thrower's complaint.
Thrower appeals.

ASSIGNMENTS OF ERROR
Thrower claims that the district court erred in granting Anson's and Progressive's motions for summary judgment, because a genuine issue of material fact exists as to Thrower's claims against both Anson and Progressive. As to Anson, Thrower claims there is a fact question regarding the validity of the release. As to Progressive, Thrower claims there is a fact question as to whether Progressive was adversely affected by the release. Because Thrower did not appeal the district court's denial of his motion for partial summary judgment, we do not directly consider the propriety of that ruling.

STANDARDS OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Hofferber v. City of Hastings, 275 Neb. 503, 747 N.W.2d 389 (2008). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.
The construction of a contract is a question of law. See State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 275 Neb. 310, 746 N.W.2d 672 (2008). Statutory interpretation presents a question of law. In re Estate of Cooper, 275 Neb. 297, 746 N.W.2d 653 (2008). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. See State ex rel. Bruning v. R.J. Reynolds Tobacco Co., supra.

ANALYSIS
The Release Is Valid and Enforceable.
Thrower contends that the district court erred in sustaining Anson's motion for summary judgment, because a genuine issue of material fact exists concerning the validity and enforceability of the release. In support of this assignment of error, Thrower admits that "a signed . . . release was sent to Anson's insurer, State Farm, on or about December 5, 2005 . . . pursuant to an . . . agreement reached between [Anson's] liability insurer and [Thrower's] attorney." Brief for appellant at 7. Nevertheless, Thrower argues that a genuine issue of material fact remains as to whether the release was subject to an oral condition that it was not effective unless and until Progressive elected not to substitute its funds for the settlement offered by State Farm. We conclude that this assignment of error is without merit.
*561 We have recognized that a settlement agreement is subject to the general principles of contract law. Strategic Staff Mgmt. v. Roseland, 260 Neb. 682, 619 N.W.2d 230 (2000). The construction of a contract is a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. See State ex rel. Bruning v. R.J. Reynolds Tobacco Co., supra. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Gary's Implement v. Bridgeport Tractor Parts, 270 Neb. 286, 702 N.W.2d 355 (2005). When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. See, Katherine R. Napleton Trust v. Vatterott Ed. Ctrs., 275 Neb. 182, 745 N.W.2d 325 (2008); Gary's Implement v. Bridgeport Tractor Parts, supra.
In exchange for $25,000, Thrower "release[d] and forever discharge[d] . . . Anson . . . from any and all claims" related to the October 31, 2003, automobile accident. This release language is unequivocal, and the release contains no written conditions restricting the effectiveness of the release on the happening of some other event.
Thrower argues that despite the unequivocal and unconditional language of the release, evidence offered at the summary judgment hearing indicated a genuine issue of material fact remained as to whether the parties had orally agreed the release was dependent upon Progressive's election not to substitute its own funds for the settlement offered by State Farm, and that therefore, the district court erred in dismissing his claim against Anson. We disagree.
Thrower's contention that the parties had an oral agreement ignores the parol evidence rule, which renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts the terms of a written agreement. Par 3, Inc. v. Livingston, 268 Neb. 636, 686 N.W.2d 369 (2004). Unless a contract is ambiguous, parol evidence cannot be used to vary its terms. Sack Bros. v. Tri-Valley Co-op., 260 Neb. 312, 616 N.W.2d 786 (2000). As stated above, the release is clear, unambiguous, and unconditional. Thrower's proposed oral condition would alter the terms of the release. Under the parol evidence rule, Thrower cannot rely upon evidence of a purported oral agreement to vary the written terms of the release, and therefore, Thrower's argument is without merit.
We conclude that in accordance with the unambiguous language of the release, Thrower settled with, released, and discharged Anson from all liability related to the accident in exchange for the receipt of $25,000. We conclude as a matter of law that the release is valid and enforceable. There is no genuine issue as to a material fact, and Anson was entitled to judgment as a matter of law. Therefore, we affirm that portion of the district court's order that sustained Anson's motion for summary judgment and dismissed Thrower's complaint against Anson.
A Genuine Issue of Material Fact Remains as to Whether Progressive Was Adversely Affected by the Release.
Having determined that the release is valid and enforceable, we now consider the implication of this settlement on Thrower's claim against Progressive for underinsured motorist benefits. Thrower contends that Progressive must supply underinsured coverage to him unless, as provided in § 44-6413(l)(a), it can show that it was adversely affected by the *562 settlement and release. Thrower claims that the district court erred in sustaining Progressive's motion for summary judgment, because a genuine issue of material fact exists as to whether Progressive was adversely affected by Thrower's release of Anson. We conclude this assignment of error has merit.
This assignment of error implicates Progressive's policy and is governed by the provisions of Nebraska's Uninsured and Underinsured Motorist Insurance Coverage Act, Neb.Rev.Stat. § 44-6401 et seq. (Reissue 2004). Pursuant to § 44-6413(l)(a), if an insured enters into a settlement with an underinsured driver with respect to bodily injury claims without having given his or her insurance carrier proper notice, the insurer may deny benefits if the settlement "adversely affect[ed] the rights of the insurer." Specifically, § 44-6413(l)(a) provides that an insured is not entitled to receive underinsured motorist coverage for "[b]odily injury [claims] with respect to which the insured . . . makes, without the written consent of the insurer, any settlement with . . . any person who may be legally liable for any injuries if such settlement adversely affects the rights of the insurer. . . ."
In the instant case, Progressive argues that its right of subrogation against Anson was adversely affected by Thrower's release. Subrogation involves the substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities. Blue Cross and Blue Shield v. Dailey, 268 Neb. 733, 687 N.W.2d 689 (2004). An insurer's subrogation rights can be no greater than the rights of an insured against a third party. See Hans v. Lucas, 270 Neb. 421, 703 N.W.2d 880 (2005). See, also, Querrey & Harrow v. Transcontinental Ins., 885 N.E.2d 1235, 1237 (Ind.2008) (Sullivan, J., dissenting, stating that "`"[o]ne who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce"'").
Section 44-6412(2) concerns uninsured and underinsured motorist coverage and expressly provides for the rights of the underinsured motorist insurer with respect to subrogation, stating, inter alia, that
[i]f a tentative agreement to settle for liability limits has been reached with the owner or operator of an under-insured motor vehicle, written notice shall be given by certified or registered mail to the underinsured motorist coverage insurer by its insured. Such notice shall include written documentation of lost wages, medical bills, and written authorization to obtain reports from all employers and medical providers. Within thirty days of receipt of such notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer shall then be subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage.
This statutory provision is consistent with the language of Thrower's insurance policy with Progressive. Under the policy, Progressive agreed to pay Thrower's personal injury damages caused by an accident with an underinsured driver, so long as Thrower would
notify [Progressive] in writing at least thirty (30) days before entering into any settlement with the owner or operator of an underinsured auto, or any liability insurer. In order to preserve [its] right of subrogation, [Progressive] may elect *563 to pay any sum offered in settlement by, or on behalf of, the owner or operator of an uninsured auto or underinsured auto. If [Progressive does] this, [Thrower] agree[d] to assign to [Progressive] all rights that [he had] against the owner or operator of an uninsured auto or underinsured auto.
Thus, both the statute and the insurance policy in this case contain a subrogation provision requiring notice to the insurer of any settlement entered into by the insured with a tort-feasor. The purpose of the notice requirement in the statute and the policy is to prevent an insured from entering into a settlement that would extinguish the underinsured motorist carrier's right of subrogation. See Bacon v. W. Am. Ins. Co., 115 Ohio App.3d 433, 685 N.E.2d 781 (1996).
We have previously considered whether an insured's settlement with a third party "adversely affected" the underinsured motorist carrier as that term is used in § 44-6413(1)(a). In Horace Mann Cos. v. Pinaire, 248 Neb. 640, 538 N.W.2d 168 (1995), we noted that if the third party was judgment-proof, such that he or she had no assets that the insurance company could pursue under its right of subrogation, then the insurance company was not adversely affected by a settlement between the insured and the third party. In Horace Mann Cos., the insurance company moved for summary judgment, arguing that because the insured had not provided it with proper notice of the settlement, the insurance company had been adversely affected by its insured's settlement with the third party and therefore it was not obligated to provide its insured with underinsured motorist coverage. We noted that because the insurance company was the moving party, it "ha[d] the burden to show that no genuine issue of material fact exist[ed]," and we reviewed the evidence offered by the insurance company to determine whether the third party had assets or was judgment-proof. Id. at 649, 538 N.W.2d at 174. In Horace Mann Cos., we determined that because the insurance company had adduced evidence of certain assets owned by the third party, it had carried its burden of demonstrating the third party was not judgment-proof, and that as a result, it demonstrated that it had been adversely affected by its insured's settlement with the third party.
In the instant case, Thrower notes that Progressive has not offered any evidence that Anson does or does not have assets. Thrower argues that such an evidentiary showing is required under the court's decision in Horace Mann Cos. We agree.
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Hofferber v. City of Hastings, 275 Neb. 503, 747 N.W.2d 389 (2008).
As the party moving for summary judgment seeking to be relieved of its underinsured obligations to Thrower, Progressive had the burden of showing that its subrogation rights were adversely affected by Thrower's release of Anson. See § 44-6413(l)(a). Because it failed to introduce evidence demonstrating that Anson possessed assets that it could have reached under its right to subrogation, Progressive failed to carry its burden of showing it was adversely affected by the settlement. Therefore, a genuine issue of material fact exists as to whether Progressive has been adversely affected by Thrower's release of Anson, and the district court erred in sustaining Progressive's motion for summary judgment. We reverse that portion of the district court's order that sustained Progressive's motion for *564 summary judgment and dismissed Thrower's complaint against Progressive, and we remand the cause for further proceedings.

CONCLUSION
In this appeal following proceedings on cross-motions for summary judgment, we affirm that portion of the district court's order in which it found a valid release, sustained Anson's motion for summary judgment, and dismissed Thrower's complaint against Anson with prejudice. However, contrary to the district court's ruling, we further conclude that a genuine issue of material fact exists as to whether Progressive was adversely affected by Thrower's release of Anson, and therefore, the district court erred in sustaining Progressive's motion for summary judgment. We reverse that portion of the district court's order that sustained Progressive's motion for summary judgment and dismissed Thrower's complaint against Progressive, and we remand the cause for further proceedings.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.