Board of Trustees of the City of Omaha Police
and Fire Retirement System, appellee, v.
City of Omaha, Nebraska, a municipal
corporation, et al., appellants.

___ N.W.2d ___

Filed January 30, 2015.    No. S-13-956.

1.  **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3.  **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.

4.  **Declaratory Judgments: Justiciable Issues.** Declaratory judgments are available when a present actual controversy exists, all interested persons are parties to the proceedings, and a justiciable issue exists for resolution.

5.  **Justiciable Issues.** A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.

6.  **Declaratory Judgments: Justiciable Issues.** A declaratory judgment action cannot be used to determine the legal effects of a set of facts which are future, contingent, or uncertain.

7.  ____: ____. At the time that the declaration is sought, there must be an actual justiciable issue from which the court can declare law as it applies to a given set of facts.

8.  **Statutes: Appeal and Error.** An appellate court does not consider a statute's clauses and phrases as detached and isolated expressions. Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.

9.  **Trusts.** Trustees are generally required to exercise reasonable effort and diligence in administering and monitoring a trust, with due attention to the trust's objectives and the interests of the beneficiaries. This may include obtaining competent guidance and assistance, depending upon the circumstances.

10. **Statutes: Words and Phrases.** As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.

11. **Statutes: Intent: Words and Phrases.** While the word "shall" may render a particular provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed as modified in part, and in part reversed and vacated.

John P. Passarelli and Matthew S. Noren, of Kutak Rock, L.L.P., for appellants.

John R. Douglas and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, and Cassel, JJ.

Stephan, J.

The City of Omaha's home rule charter authorizes the city council to establish a "pension and retirement system or systems" for city employees.[1] The charter provides that the assets and reserves of any such system shall constitute a "separate and independent trust fund," title to which shall be vested in a board of trustees to be created by ordinance.[2] Pursuant to this authority, the Omaha City Council created the City of Omaha Police and Fire Retirement System (the System) which is administered by a board of trustees.[3] The issues in this declaratory judgment action brought by the board against the City of Omaha and its mayor and city council (collectively the City) are whether the board has authority to retain an actuarial consultant and private legal counsel at city expense. The district court for Douglas County determined the board had such authority, and the City perfected this timely appeal and petitioned to bypass the Nebraska Court of Appeals. We granted the petition.

## BACKGROUND

Pursuant to Omaha's home rule charter,[4] the Omaha City Council enacted an ordinance creating

---

[1] Omaha City Charter, art. VI, § 6.09 (1994).

[2] *Id.*, § 6.10.

[3] Omaha Mun. Code, ch. 22, art. III, §§ 22-61, 22-62, and 22-72 (2001).

[4] Omaha City Charter, *supra* note 1, §§ 6.09 and 6.10.

a separate and independent trust fund to be known as the [S]ystem trust fund, title to which shall be vested in the board of trustees and into which shall be paid all contributions made under the [S]ystem by the members and the city after the date of establishment of such fund, and from which shall be paid all benefits provided by the [S]ystem, including benefits to retired members, widows or widowers, and children who began receiving benefits prior to establishment of such fund.[5]

The ordinance authorizes the board to maintain a portion of the fund in cash for the "payment of benefits and investment expenses" and requires it to "invest and reinvest" all remaining assets of the fund with "all investment income and losses being credited to such fund."[6] The ordinance further provides that the city finance director "shall make or approve all investments for the board."[7]

The board consists of seven members. Three members are elected from Omaha's police and firefighter unions; three members are representatives of the City, including the finance director, the human resources director, and a member of the city council; and the seventh member is not associated with the City or the unions and is elected by the other six members.

Under the Omaha home rule charter, the board "shall formulate policy for the [S]ystem and shall supervise its operation."[8] Also pertinent to the issues presented in this case is § 22-69 of the Omaha Municipal Code,[9] which provides:

> Subject to the board of trustees, the management of the [S]ystem shall be directed by the following officers, to whom shall be delegated the indicated responsibilities:
>
> (a) The city finance director shall be the administrative head of the [S]ystem and shall approve all investments of the retirement fund.

---

[5] Omaha Mun. Code, *supra* note 3, § 22-72.

[6] *Id.*

[7] *Id.*

[8] Omaha City Charter, *supra* note 1, § 6.10.

[9] Omaha Mun. Code, ch. 22, art. III, § 22-69 (2002).

(b) The city attorney shall be the legal advisor to the board.

(c) The county treasurer shall be the treasurer of the [S]ystem.

(d) The board, subject to applicable personnel regulations, may employ an actuary. The actuary shall act as technical advisor to the board on matters regarding operation of the [S]ystem, and shall recommend mortality tables, interest rates, discontinuance tables, and any other tables necessary for any investigation or valuation to be made of the [S]ystem, which tables and interest rates shall be subject to the approval of the board. The actuary shall make such investigation and valuation at such times as may be requested by the board, but at least once in each five-year period. The actuary shall act at all times as technical advisor to the board in such matters as it may request.

(e) The board, in administering the [S]ystem, may utilize the services of existing city departments and personnel as are required for the proper operation of the [S]ystem.

In September 2011, the board voted to retain a private law firm to research whether the board had an "obligation to retain counsel separate from the Omaha City Attorney's office for advice when the City or Unions are involved." Subsequently, the city attorney sent a memorandum to the board, stating that because the city attorney is designated by § 22-69 as its legal advisor, the board lacked authority to retain outside counsel unless the city attorney had a conflict of interest. The city attorney further advised the board that in the absence of a conflict, any costs incurred in retaining outside counsel would not be considered an appropriate administrative expense payable from the City's general fund.

At a June 2012 meeting, the board considered two law firms and selected one of them as "the Board's potential outside counsel." The city finance director was present at this meeting and opined that based upon the city attorney's memorandum, no money from the City's general fund could be used to pay outside legal counsel retained by the board.

At the same meeting, the board discussed hiring the board's actuarial consultant to conduct a study of disability benefits paid by the System. The board believed this study was necessary because the System was "underfunded" and seemed to be paying out disproportionately higher disability benefits than other pension funds of comparable size. The board wanted the study to help determine whether it should "petition the [C]ity or the units to change the contract or the statutes." One member noted the recommendation of the city finance director that the City would not pay for the study. Nevertheless, on a 4-to-2 vote with one abstention, the board voted to hire its actuary "in order to conduct an investigation/best practices review of our disability benefits and component and the administration and policies to compare them to other comparable police and fire pension plans."

The board then commenced a declaratory judgment action against the City in which it asked the district court to (1) construe Omaha's home rule charter and applicable ordinances to authorize the board to retain consultants and independent legal counsel and (2) declare that the expenses associated with such retention would be administrative expenses payable from the City's general fund. After the City filed an answer asserting various defenses, the board moved for summary judgment.

The district court sustained the board's motion. It determined there was a justiciable controversy in that there was an actual dispute between the parties which could be resolved by construction of applicable city ordinances. The court determined the board was authorized under § 22-69 to hire outside consultants and independent legal counsel. It reasoned that to fulfill its fiduciary duties to the beneficiaries of the fund, the board had "the discretion to hire outside consultants to the extent that such consultants are necessary for the Board to effectively 'formulate policy for' and 'supervise' the 'operation' of the System." The court qualified its holding by stating that in the exercise of this discretionary authority, the board "may not act in a manner that is unreasonable, arbitrary, capricious, or motivated by anything other than an obligation to faithfully perform its fiduciary duties to the beneficiaries of the System."

The court also determined the board was authorized to hire independent legal counsel to the extent such counsel is necessary to "formulate policy for" and "supervise" the "operation" of the System, so long as the board does not operate in a manner that "is unreasonable, arbitrary, capricious, or motivated by anything other than an obligation to faithfully perform its fiduciary duties." The court based this determination on the board's fiduciary duties to the beneficiaries of the System and concluded the language of § 22-69 did not limit the board's discretionary authority to retain outside counsel.

Finally, the court determined the costs associated with hiring outside counsel and consultants were administrative expenses under § 22-71 of the Omaha Municipal Code.[10] The district court reasoned the City had an obligation to pay for consultants and legal counsel retained by the board based on the plain and unambiguous language of the ordinance stating that "'[a]ll costs and expenses incurred in the administration of the [S]ystem shall be paid by the [C]ity by appropriation from the general fund . . . .'"[11] It reasoned that these would not be administrative expenses if the City showed that "the Board acted in a manner that was unreasonable, arbitrary, capricious, or motivated by anything other than an obligation to faithfully perform its fiduciary duties to the beneficiaries of the System."

ASSIGNMENTS OF ERROR

The City assigns, restated and consolidated, that the district court erred in (1) finding that Omaha City Charter § 6.10 and Omaha Mun. Code §§ 22-69 and 22-72 grant the board discretion to hire outside consultants and independent legal counsel and (2) finding that Omaha Mun. Code § 22-71 requires the City to pay expenses incurred by the board in hiring outside consultants and independent legal counsel without the City's prior authorization.

---

[10] Omaha Mun. Code, ch. 22, art. III, § 22-71 (2001).

[11] *Id*.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[12] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[13]

[3] When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[14]

## ANALYSIS

### Justiciable Controversy

[4-7] Declaratory judgments are available when a present actual controversy exists, all interested persons are parties to the proceedings, and a justiciable issue exists for resolution.[15] A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.[16] A declaratory judgment action cannot be used to determine the legal effects of a set of facts which are future, contingent, or uncertain.[17] At the time that the declaration is sought,

---

[12] *City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137 (2008); *Hofferber v. City of Hastings*, 275 Neb. 503, 747 N.W.2d 389 (2008).

[13] *Id.*

[14] *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010); *Berens & Tate v. Iron Mt. Info. Mgmt.*, 275 Neb. 425, 747 N.W.2d 383 (2008).

[15] See *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994).

[16] *Professional Firefighters Assn. v. City of Omaha*, 282 Neb. 200, 803 N.W.2d 17 (2011).

[17] *Boyles, supra* note 15.

there must be an actual justiciable issue from which the court can declare law as it applies to a given set of facts.[18]

The parties do not dispute the determination of the district court that this case presents a justiciable controversy which is capable of judicial resolution in the form of a declaratory judgment. We agree that a justiciable controversy exists, but we view it as being narrower than characterized by the parties and the district court. The district court defined the legal issue as whether the board has authority "to hire outside consultants and independent legal counsel" at the City's expense. The phrase "outside consultants" could encompass a wide variety of professional disciplines. But the actual dispute between the parties is more narrowly focused on (1) the authority of the board to retain an actuarial consultant to undertake a study of disability benefits paid by the System and retain independent legal counsel and (2) whether the costs of such actions are administrative expenses. We therefore address only those issues.

Nature of Entity

It is first necessary to determine the nature of the board as an entity. We agree with the City that the board is not a separate and distinct political subdivision. But we cannot agree with its argument that the board is "merely an administrative agent of the City."[19]

The Omaha home rule charter provides that the assets and reserves of a pension and retirement system established by the City shall be a "separate and independent trust fund" and that the board "shall formulate policy for the [S]ystem and shall supervise its operation."[20] From this language, it is clear that the board serves as a trustee of the assets of the System. Its responsibility, fiduciary in nature, is owed to current and former city employees who are beneficiaries of the trust fund, not to the citizenry as a whole, as would be the case if it were an administrative agency.[21] Yet the board is not entirely

---

[18] Id.

[19] Reply brief for appellants at 4.

[20] Omaha City Charter, *supra* note 1, § 6.10.

[21] See, generally, Neb. Rev. Stat. § 30-3867(a) (Reissue 2008).

independent of the City, because the scope of its responsibilities are defined by the City's charter provisions and ordinances applicable to the System.

## Authority to Retain
## Actuarial Consultant

Section 22-42(f) of the Omaha Municipal Code specifically authorizes the board to "employ an actuary" who "shall act as a technical advisor to the board on matters regarding the operation of the [S]ystem." Section 22-42(f) describes specific functions to be performed by the actuary, and then states that "[t]he actuary shall act at all times as technical advisor to the board on such matters as it may request."

[8] An appellate court does not consider a statute's clauses and phrases as detached and isolated expressions. Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.[22] Reading the ordinance based on these principles, we conclude it authorizes the board to seek technical assistance from an actuary on matters which are not specifically enumerated. But we agree with the district court that the board's utilization of an actuary must be necessary for the board to effectively perform its duties under the Omaha home rule charter to "formulate policy for" and "supervise [the] operation" of the System.[23] Likewise, we agree with the holding of the district court that in requesting technical assistance from an actuary, "the Board may not act in a manner that is unreasonable, arbitrary, capricious, or motivated by anything other than an obligation to faithfully perform its fiduciary duties to the beneficiaries of the System."[24]

The record reflects that the System was underfunded and that the board perceived it was its duty as a fiduciary of the System to monitor unfunded liabilities. The board had information that unusually high disability payments, compared to other pension funds of similar size, could be contributing to the problem. As one board member explained,

---

[22] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[23] Omaha City Charter, *supra* note 1, § 6.10.

[24] See *Bass v. County of Saline*, 171 Neb. 538, 106 N.W.2d 860 (1960).

We had more officers and fire personnel out on disability pensions than other similarly-sized funds. We wanted to find out whether it was a problem with our statutory scheme or the contracts that were being negotiated between the city and the unions.

But we wanted to figure out why our disability payments were so high. Did we need to be doing something to see if officers or fire personnel could go back to work after they went out on a disability pension?

That's why we wanted to retain our actuary, to do this analysis, and get back to us so that we could then as a board petition the city or the units to change the contract or the statutes. We don't participate in those negotiations, except as an independent body. We could petition for a change.

[9] We conclude this proposed utilization of an actuarial consultant fell within the scope of the board's obligation to formulate policy and supervise the operation of the fund. Certainly, the future financial viability of the fund was a matter of legitimate concern to the board, and it was reasonable for it to request an actuarial analysis of a specific aspect of the System's operation which could affect such viability. It was also reasonable for the board to seek the assistance of an actuary in order to have an accurate and complete understanding of the potential problem before recommending any contractual or legislative solutions. Trustees are generally required "to exercise reasonable effort and diligence" in administering and monitoring a trust, with "due attention to the trust's objectives and the interests of the beneficiaries."[25] This may include "obtaining competent guidance and assistance," depending upon the circumstances.[26]

The City argues that if the board has authority to retain an actuarial consultant, the board must pay for the consultant, because the retention is an investment expense, not an administrative expense. The City relies on § 22-71, which states: "All costs and expenses incurred in the administration of the

---

[25] Restatement (Third) of Trusts § 77, comment *b*. at 82 (2007).

[26] *Id.* at 83.

[S]ystem shall be paid by the [C]ity by appropriation from the general fund; provided, however, that investment expenses may be charged to income or principal of the retirement fund in accordance with accepted general accounting princip[le]s for such funds."

We agree with the district court that the cost associated with the actuarial study sought by the board is an administrative expense, not an investment expense. As we have noted, the study falls within the board's responsibility under the home rule charter to "formulate policy for the [S]ystem" and "supervise its operation."[27] We agree with the district court that "the City cannot refuse to pay such expenses absent a showing that the Board acted in a manner that was unreasonable, arbitrary, capricious, or motivated by anything other than an obligation to faithfully perform its fiduciary duties to the beneficiaries of the System."[28]

## Authority to Retain Counsel

The question whether the board has discretionary authority to retain outside legal counsel turns on language in § 22-69, which provides that "[s]*ubject to* the board of trustees . . . [t]he city attorney *shall* be the legal advisor to the board." (Emphasis supplied.) The district court found that "subject to" gave the board discretion to use the city attorney. The court reasoned that "shall" was a mandate requiring the city attorney to provide legal advice to the board, subject to the board's discretion, not a mandate that the board use the city attorney as a legal advisor.

The City argues that "subject to" should not be construed to give the board absolute discretion to use the city attorney as a legal advisor. Instead, the City argues the more sensible construction of "subject to" in this case is that the city attorney shall provide legal advice to the board under the general direction and control of the board.

We have held that the expression "subject to" is a term of qualification which acquires its meaning from the context in

---

[27] Omaha City Charter, *supra* note 1, § 6.10.

[28] See *Bass, supra* note 24.

which it appears.[29] In *State, ex rel. Johnson, v. Tilley*,[30] we held that "subject to" in the context of approval of expenditures meant the attorney general had the discretionary power to approve the expenditure of the fund. We defined "subject to" as being "'dependent upon; . . . limited by; . . . under the control, power, or dominion of.'"[31]

[10,11] As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.[32] While the word "shall" may render a particular provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done.[33]

An Illinois appellate court construed a similar provision in *People ex rel. Todd v. Board of Education*.[34] There, a school board and its attorney disputed the meaning of a statute which provided that the school board shall appoint "'an attorney, who shall have general charge and control, subject to the approval of the board, of the law department and the employees therein.'"[35] The court rejected the school board's argument that the phrase "'subject to'" gave the board absolute and uncontrolled power to manage the law department over the objections of the attorney.[36] The court concluded the attorney's authority to manage the law department in accordance with the general policies of the board was not subject to the absolute control and direction of the board.

---

[29] *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965).

[30] *State, ex rel. Johnson, v. Tilley*, 137 Neb. 173, 288 N.W. 521 (1939).

[31] *Id*. at 178, 288 N.W.2d at 523.

[32] *Spradlin v. Dairyland Ins. Co*., 263 Neb. 688, 641 N.W.2d 634 (2002); *State on behalf of Minter v. Jensen*, 259 Neb. 275, 609 N.W.2d 362 (2000).

[33] *State ex rel. Parks v. Council of City of Omaha*, 277 Neb. 919, 766 N.W.2d 134 (2009); *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005); *State on behalf of Minter, supra* note 32.

[34] *People ex rel. Todd v. Board of Education*, 258 Ill. App. 271 (1930).

[35] *Id*. at 276.

[36] *Id*. at 279.

Although this case presents a different context, we reach a similar result. Section 22-69 is a clear legislative statement that the city attorney shall be the legal advisor to the board. The fact that the city attorney is required to perform this function "[s]ubject to the board of trustees" simply delineates the attorney-client relationship and requires that the city attorney work under the general direction and control of the board. We construe the ordinance to mean the board must utilize the city attorney as its legal advisor under its general direction unless there is a conflict of interest which prevents the city attorney from serving in that capacity. We deem the record is insufficient to determine whether such a conflict exists in the circumstances of this case. We therefore do not address that issue, which was likewise not addressed by the district court.

## CONCLUSION

We conclude that the district court was without jurisdiction to determine the authority of the board to retain outside consultants other than an actuary, given the absence of a justiciable controversy as to the broader issue. But we conclude that the district court did not err in determining that the board had legal authority to retain an actuary to undertake a study of disability benefits paid from the System's trust fund and that the cost of such study is an administrative expense payable by appropriation from the City's general fund. Thus, as to the issue of the board's authority to retain consultants, we affirm the judgment as modified. We reverse and vacate that portion of the judgment of the district court declaring that the board has discretion to hire independent legal counsel whenever it deems such retention to be necessary.

AFFIRMED AS MODIFIED IN PART, AND
IN PART REVERSED AND VACATED.

WRIGHT and MILLER-LERMAN, JJ., not participating.