752 N.W.2d 137 (2008)
276 Neb. 70
CITY OF OMAHA, Nebraska, a municipal corporation, and City of Omaha Mayor Michael Fahey, appellees,
v.
CITY OF ELKHORN, Nebraska, a municipal corporation, and Fraternal Order of Police Lodge No. 53, appellants.
Nos. S-07-174, S-07-263.
Supreme Court of Nebraska.
July 11, 2008.
*140 Jeff C. Miller, Duncan A. Young, and Keith I. Kosaki, of Young & White, Omaha, for appellants.
William M. Lamson, Jr., Lawrence F. Harr, and Craig F. Martin, of Lamson, Dugan & Murray, L.L.P., and Paul D. Kratz, Omaha City Attorney, and Alan M. Thelen, Omaha, for appellees.
*141 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

I. NATURE OF CASE
These two cases, Nos. S-07-174 and S-07-263, consolidated for appeal, arise from an annexation dispute. In these appeals, we are asked to determine whether certain contract provisions requiring continued employment and allowing for the payment of severance benefits in the event the City of Elkhorn, Nebraska (Elkhorn), was annexed by the City of Omaha, Nebraska, appellee (Omaha), are valid and enforceable. In each case, Omaha sought a declaration in the district court for Douglas County that the agreements, which had been negotiated by Elkhorn prior to its annexation by Omaha, were not valid because they violated Neb. Const. art. III, § 19, which generally prohibits paying a gratuity or "extra compensation" to a public employee. The district court concluded it had jurisdiction, declared the severance provisions invalid and unenforceable, and granted summary judgment in favor of Omaha. Case No. S-07-174 involves Elkhorn and the Fraternal Order of Police Lodge No. 53. Case No. S-07-263 involves Elkhorn and management employees Donald Eikmeier, Wendy Anderson, Kevin Daly, Timothy Dempsey, Cheryl Eckerman, Steven Morrissey, Jesse Robinson, and "Jane Does" and "John Does."
We conclude that jurisdiction exists over these cases. However, contrary to the district court's ruling, we conclude that because the severance provisions were determined prior to the services rendered by the police and management appellants and are supported by adequate consideration, the severance provisions are enforceable and the payments made under the severance provisions are not unconstitutional gratuities. Accordingly, we reverse the district court's grant of summary judgment in each case, and we remand the causes for further proceedings consistent with this opinion.

II. FACTS
The material facts are essentially undisputed. Beginning in 2003, the Fraternal Order of Police Lodge No. 53 (hereinafter the police appellants); and Eikmeier, as Elkhorn's city administrator; Anderson; Daly; Dempsey; Eckerman; Morrissey; Robinson; and Jane and John Does, as management personnel within Elkhorn's government (hereinafter collectively the management appellants), entered into contracts that provided for the payment of severance benefits. The severance provisions in these contracts provided generally that in exchange for their agreement to remain employed, the police and management appellants would be entitled to the payment of severance benefits if Elkhorn was annexed and if at the time of the annexation, the individual police and management appellants were still employed by Elkhorn.
Specifically, the police appellants' severance provision provided that they would be paid compensation equal to 52 weeks in monthly installments beginning with the month after the police appellants' last day of employment with Elkhorn. The police appellants' severance provision further stated that if, during the 52-week compensation period, the police appellants were employed as law enforcement officers by any political subdivision of the State of Nebraska, the right to compensation under the severance provision terminated.
Eikmeier's agreement provided that Eikmeier would receive 6 months' pay as severance benefits, which could be paid in *142 one lump sum at Eikmeier's election. The agreement of the remaining management appellants provided that they would receive 10 weeks' pay as severance benefits, which could be paid in one lump sum at the individual management appellant's election. There was no provision in the management appellants' contracts that their severance benefits would be terminated if they found employment subsequent to their last day of employment with Elkhorn.
Beginning in early 2005, Omaha and Elkhorn each passed annexation ordinances. Omaha annexed Elkhorn, and Elkhorn sought to annex surrounding communities in an effort to immunize itself from Omaha's annexation. On March 9, 2005, Elkhorn filed a complaint in the district court for Douglas County, seeking to prevent Omaha's annexation of Elkhorn from taking effect (the annexation case). Following a trial, the district court determined that Omaha's annexation ordinance was valid and that Elkhorn's annexation ordinance was invalid. In an opinion filed January 12, 2007, this court affirmed the district court's order in the annexation case and noted that Omaha's annexation of Elkhorn was effective March 24, 2005. See City of Elkhorn v. City of Omaha, 272 Neb. 867, 725 N.W.2d 792 (2007).
On March 31, 2006, Omaha filed two separate actions, which are the cases presently before this court. In these cases, Omaha sought declaratory judgments that the severance provisions were invalid and unenforceable under Neb. Const. art. III, § 19, which prohibits paying extra compensation to a public employee after services have been rendered. In each case, Omaha filed a motion for summary judgment, and in each case, appellants filed oppositions to the motion. Omaha's motions and appellants' opposition to the motions came on for evidentiary hearings.
During the hearings, appellants challenged the district court's subject matter jurisdiction, claiming that Omaha lacked standing to bring its declaratory judgment actions and further claiming that the issues raised therein were not ripe. The police appellants' evidence included an affidavit from Eikmeier in his capacity as city administrator. Eikmeier stated as follows:
10. In July 2003, [the police appellants] presented to me, as the chief negotiator for ... Elkhorn, a proposed Labor Agreement....
11. As part of the proposal by [the police appellants, they] requested a severance provision....
13. [The police appellants] maintained that such a severance provision was necessary to insure the ability to provide qualified police officers, in the event of annexation ... of Elkhorn by any other political entity.
19. The [severance provision] requires the [police appellants] to continue employment with [Elkhorn] until such time as [Elkhorn] no longer exists, in exchange for an agreement of [Elkhorn] to pay a retention incentive....
20. [The p]olice [appellants] are promised a retention incentive payment in exchange for such employees foregoing [sic] any opportunity of employment in other entities during any period of potential annexation, or any transition required because of annexation, in order to receive any of the severance incentive payments.
The management appellants also introduced into evidence an affidavit from Eikmeier in his capacity as city administrator. In his affidavit, Eikmeier stated as follows:
10. [As part of negotiations in] July 2003 ... [the management appellants] presented demands regarding job security and incentive payments as a condition for them to continue their employment *143 until such time as ... Elkhorn ceased to exist as a result of ... annexation.
....
14. In the summer of 2003 I presented and recommended to the Elkhorn City Council and Mayor that ... Elkhorn take the necessary steps designed to assist ... Elkhorn in retaining the services of ... employees, and to address the concerns of losing employment as a result of ... annexation....
15. In September 2003, the City Council approved the recommendation to provide for compensation to those [employees] in exchange and in consideration for their continued service to ... Elkhorn.
16. The Severance Agreement is, in reality and by its terms, a retention incentive agreement whereby the employee agrees to continue in the employment of ... Elkhorn in exchange for [Elkhorn's] promise of a payment upon the completion of the service.
....
18. Without the retention incentive... Elkhorn would have lost many of its key employees ... because of the uncertainty of Elkhorn's continued existence.
Eikmeier's affidavit testimony in both cases was essentially uncontroverted by Omaha.
By entry of an order in each case, the district court sustained Omaha's summary judgment motions. The district court determined in each case that it had subject matter jurisdiction and declared that the severance provisions were void because they violated Neb. Const. art. III, § 19. The district court enjoined enforcement of the provisions. Appellants appeal from the district court's orders.

III. ASSIGNMENTS OF ERROR
Appellants raise several assignments of error that we summarize and restate as two. Appellants claim, restated, that the district court erred (1) in determining that it had subject matter jurisdiction over Omaha's declaratory judgment actions and (2) in sustaining Omaha's motions for summary judgment based upon its determination that the severance provisions violated Neb. Const. art. III, § 19.

IV. STANDARDS OF REVIEW
[1] When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. In re Estate of Rose, 273 Neb. 490, 730 N.W.2d 391 (2007).
[2,3] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Hofferber v. City of Hastings, 275 Neb. 503, 747 N.W.2d 389 (2008). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.
[4] The construction of the Constitution is a judicial function, and the Constitution is interpreted as a matter of law. Myers v. Nebraska Equal Opp. Comm., 255 Neb. 156, 582 N.W.2d 362 (1998).

V. ANALYSIS

1. THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION
[5] Appellants raise issues of standing and ripeness before this court and contend *144 that the district court erred when it concluded that it had subject matter jurisdiction in these cases. Appellants argue that because Omaha was not a party to the severance provisions, it lacked standing to seek a declaratory judgment concerning the validity of those provisions. Appellants also argue that because the annexation case was on appeal at the time Omaha filed its declaratory judgment actions, the lawsuits were not ripe. As explained below, we conclude that appellants' assignment of error challenging jurisdiction is without merit.
(a) Omaha Had Standing to Seek Declaratory Judgments as to the Enforceability of the Severance Provisions
[6-9] With regard to standing, this court has recognized that standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. In re Application of Metropolitan Util. Dist. of Omaha, 270 Neb. 494, 704 N.W.2d 237 (2005). We have further stated that the defect of standing is a defect of subject matter jurisdiction. Citizens Opposing Indus. Livestock v. Jefferson Cty., 274 Neb. 386, 740 N.W.2d 362 (2007). Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. See, id:, Chambers v. Lautenbaugh, 263 Neb. 920, 644 N.W.2d 540 (2002). If the party bringing the suit lacks standing, the district court is without jurisdiction to decide the issues in the case. See McClellan v. Board of Equal. of Douglas Cty., 275 Neb. 581, 748 N.W.2d 66 (2008).
In the instant cases, Omaha had standing to seek a judicial determination regarding the enforceability of the severance provisions. Omaha filed its lawsuits pursuant to Nebraska's Uniform Declaratory Judgments Act, Neb.Rev. Stat. § 25-21,149 et seq. (Reissue 1995 & Cum.Supp.2006). A section of that act, § 25-21,150, provides that "[a]ny person interested under a ... written contract or other writings constituting a contract ... may have determined any question of construction or validity arising under the ... contract[.]"
Omaha became interested in the severance provisions when it annexed Elkhorn, and pursuant to Neb.Rev.Stat. § 14-118 (Reissue 1997), it succeeded to the contracts. Section 14-118 provides in pertinent part that
[w]henever any city of the metropolitan class shall extend its boundaries so as to annex or merge with it any city or village, the laws, ordinances, powers, and government of such metropolitan city shall extend over the territory embraced within such city or village so annexed or merged with the metropolitan city from and after the date of annexation. The date of annexation or merger shall be set forth in the ordinance providing for the same, and after said date the metropolitan city shall succeed to all the property and property rights of every kind, contracts, obligations, and choses in action of every kind held by or belonging to the city or village annexed or merged with it, and the metropolitan city shall be liable for and recognize, assume, and carry out all valid contracts, obligations and licenses of any city or village so annexed or merged with the metropolitan city.
In accordance with § 14-118, Omaha, a city of the metropolitan class, see City of Elkhorn v. City of Omaha, 272 Neb. 867, 725 N.W.2d 792 (2007), succeeded to and became liable for the severance provisions on March 24, 2005, the date Omaha's annexation *145 ordinance became effective. See id. Compare Airport Authority of City of Millard v. City of Omaha, 185 Neb. 623, 177 N.W.2d 603 (1970) (citing § 14-118 and stating that Omaha's annexation of Millard did not impair contracts entered into by Millard airport authority prior to annexation date, because Omaha incurred obligation to carry out contract by virtue of annexation). Once the annexation ordinance became effective, Omaha was liable under the severance provisions and Omaha became "interested" in those provisions. See § 25-21,150. Thus, contrary to the appellants' jurisdictional challenge, Omaha's interest gave it standing to seek a declaratory judgment regarding the enforceability of the severance provisions.

(b) The Issues in These Cases Are Ripe for Determination
[10-14] With regard to ripeness, we have recognized that if an action is not ready, or "ripe" for judicial determination, then the district court lacks subject matter jurisdiction to consider the case. See Bonge v. County of Madison, 253 Neb. 903, 573 N.W.2d 448 (1998). In the context of declaratory judgment actions, we have stated generally that "[a] court should refuse a declaratory judgment action unless the pleadings present a justiciable controversy which is ripe for judicial determination.... An action for declaratory judgment cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain." Central Neb. Pub. Power v. Jeffrey Lake Dev., 267 Neb. 997, 1003, 679 N.W.2d 235, 241 (2004). Accord Ryder Truck Rental v. Rollins, 246 Neb. 250, 518 N.W.2d 124 (1994). In a similar vein, we have noted that although not a constitutional prerequisite for jurisdiction, an actual case or controversy is necessary for the exercise of judicial power. Orchard Hill Neighborhood v. Orchard Hill Mercantile, 274 Neb. 154, 738 N.W.2d 820 (2007).
[15] A determination with regard to ripeness depends upon the circumstances in a given case. This is because "`[t]he difference between an abstract question and a [case ripe for determination] is one of degree....'" See Nebraska Public Power Dist. v. MidAmerican Energy, 234 F.3d 1032, 1038 (8th Cir.2000) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).
[16] It has been recognized that a determination of judicial ripeness often involves a two-part analysis. The Texas Supreme Court described this two-part approach by stating that "[r]ipeness ... involves both jurisdictional and prudential concerns." See Perry v. Del Rio, 66 S.W.3d 239, 250 (Tex.2001). The court explained that when making a ripeness determination, a court must consider, as a jurisdictional matter, whether it can act at a certain time and also, as a prudential matter, whether it should act at that time.
A similar approach was adopted by the U.S. Court of Appeals for the Eighth Circuit. In Nebraska Public Power Dist. v. MidAmerican Energy, supra, a federal declaratory judgment action case, the Eighth Circuit stated that the ripeness inquiry required an examination of both the jurisdictional question of the "`fitness of the issues for judicial decision'" and of the prudential question concerning the "`hardship to the parties of withholding court consideration.'" 234 F.3d at 1038 (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The Eighth Circuit explained that
[t]he "fitness for judicial decision" inquiry goes to a court's ability to visit an issue.... [I]t safeguards against judicial review of hypothetical or speculative disagreements....

*146 In addition to being fit for judicial resolution, an issue must be such that delayed review will result in significant harm. "Harm" includes both the traditional concept of actual damagespecuniary or otherwiseand also the heightened uncertainty and resulting behavior modification that may result from delayed resolution.
Nebraska Public Power Dist. v. MidAmerican Energy, 234 F.3d at 1038. We consider this two-part analytical approach to be appropriate when evaluating a ripeness challenge and employ it in the present cases.
With regard to the jurisdictional aspect of ripeness, we disagree with appellants' argument that posits that these cases were not ripe at the time Omaha filed its declaratory judgment actions due to the existence of the appeal in the annexation case and that as a result, these cases remained immutably unripe through their pendency. Appellants' contention ignores this court's prior decisions involving Omaha's annexation of the former city of Millard, wherein we filed opinions on the same day that, first, affirmed the district court's determination that the annexation was valid and, second, notwithstanding the pendency of the annexation appeal, considered and resolved issues involving whether contracts entered into by the annexed airport authority were affected by the annexation. See City of Millard v. City of Omaha, 185 Neb. 617, 177 N.W.2d 576 (1970) (affirming district court's decision that Omaha's annexation of Millard was valid), and Airport Authority of City of Millard v. City of Omaha, 185 Neb. 623, 177 N.W.2d 603 (1970) (determining airport authority's contracts were not impaired by Omaha's annexation of Millard).
[17] Appellants' argument presumes that ripeness is an unchanging characteristic of a lawsuit. However, just as a court can consider the issue of mootness during the pendency of litigation, see Keef v. State, 271 Neb. 738, 716 N.W.2d 58 (2006) (determining issue on appeal challenging statute became moot when Legislature repealed statute after filing of litigation), a court can take into account all information available to it at the time a ripeness challenge is considered and decide whether an issue is ripe for determination, see 13A Charles Alan Wright et al., Federal Practice and Procedure § 3532.1 at 136-37 (2d ed.1984) (stating that "[r]ipeness should be decided on the basis of all the information available to the court. Intervening events that occur after decision in lower courts should be included, just as must be done with questions of mootness"). The U.S. Supreme Court has said "since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern." Regional Rail Reorganization Act Cases, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).
These cases were filed in district court on March 31, 2006. This court's decision in the annexation case was filed on January 12, 2007, and stated that Omaha's annexation of Elkhorn was effective March 24, 2005. Thus, although the appeal in the annexation case was resolved during the pendency of the present litigation, as a matter of law, Omaha annexed Elkhorn and succeeded to its contracts on March 24, 2005, which is prior to the filing of these cases in the district court. Taking into consideration all information available to us, as we must, we reject appellants' jurisdictional argument regarding ripeness.
With respect to the prudential aspect of ripeness, we believe there can be no reasonable dispute as to the "harm" that would result from a delayed review in the instant cases. As noted above, the annexation *147 is complete and final. Dismissing these appeals at the present time would result in delay and the unnecessary expense of judicial resources. Compare CenTra, Inc. v. Chandler Ins. Co., 248 Neb. 844, 854, 540 N.W.2d 318, 327 (1995) (discussing appellate court's attempt to avoid relitigating issues "at the costs of greater delay ... and needless waste of judicial resources"). The issue in these cases is essentially legal in nature and may be resolved without further factual development. See Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), abrogated on other grounds, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Omaha's challenge to and our consideration of the severance provisions are limited to a constitutional analysis. Continued uncertainty regarding the enforceability of the severance provisions is undesirable and unnecessary. After consideration of both the jurisdictional and prudential aspects of ripeness, we conclude the instant cases are ripe for judicial consideration.
Accordingly, appellants' assignment of error challenging jurisdiction is without merit.

2. THE SEVERANCE PROVISIONS ARE NOT AN UNCONSTITUTIONAL GRATUITY
[18] For their substantive assignment of error, appellants contend that the district court erred in sustaining Omaha's motions for summary judgment based upon its conclusion that the severance provisions violated Neb. Const. art. III, § 19. Appellants' arguments are addressed solely to the constitutionality of the provisions under Neb. Const. art. III, § 19, and our analysis is similarly circumscribed. Appellants claim that the district court's determination that the severance provisions are invalid because they grant "extra compensation" after services have been rendered is contrary to existing Nebraska case law and ignores the evidence in these cases. We find merit to appellants' argument. Because the uncontroverted evidence demonstrates that the terms of the severance provisions were determined before services were rendered and are supported by adequate consideration, we conclude that the provisions do not violate Neb. Const. art. III, § 19, and are enforceable. We therefore reverse the district court's orders and remand the causes for further proceedings consistent with this opinion.
[19] Article III, § 19, provides in pertinent part that "[t]he Legislature shall never grant any extra compensation to any public officer, agent, or servant after the services have been rendered...." Article III, § 19, applies to the State and its political subdivisions. See Retired City Civ. Emp. Club of Omaha v. City of Omaha Emp. Ret. Sys., 199 Neb. 507, 260 N.W.2d 472 (1977). We have said that when the "services" for which compensation is granted are rendered prior to the date on which the terms of compensation are determined, the "benefits awarded are not compensation but are a gratuity." See Wilson v. Marsh, 162 Neb. 237, 252, 75 N.W.2d 723, 732 (1956). It follows that when the "services" for which compensation is paid are rendered after the date on which the terms of compensation are established, the benefits awarded are not a gratuity.
In the instant cases, Omaha argued and the district court agreed that the moneys to be paid to the police and management appellants under the severance provisions constituted an improper gratuity because the moneys were payable only in the event of and after Elkhorn's annexation. The district court determined that "annexation, rather than continued employment, is the key factor" that led to the payment of the severance benefits. This determination is *148 contrary to the significance of the material facts and of the applicable law.
In Myers v. Nebraska Equal Opp. Comm., 255 Neb. 156, 582 N.W.2d 362 (1998), we considered whether an amount that the Nebraska Equal Opportunity Commission (NEOC) had agreed to pay Lawrence R. Myers, an NEOC employee, to resign his position with the NEOC and to relinquish certain other rights constituted an unconstitutional gratuity in violation of Neb.Const. art. III, § 19. We framed the issue in that case as being whether Myers' resignation and relinquishment of rights constituted adequate consideration to support a binding contract and a legal obligation to pay. In Myers, we stated that if the consideration was adequate, the NEOC was obligated to pay under the contract, and that the payment to Myers was not an unconstitutional gratuity.
[20] In resolving the issue posed in Myers, we characterized consideration as being "sufficient to support a contract if there is any detriment to the promisee or any benefit to the promisor." 255 Neb. at 163, 582 N.W.2d at 367. We then reviewed the record and observed that the NEOC had entered into the agreement with Myers "to prevent any impairment in its operation." Id. at 165, 582 N.W.2d at 368-69. We noted that Myers had relinquished his right to try to clear his name after certain allegations had been leveled against him and that the relinquishment of this right constituted a detriment to Myers and served as a benefit to the NEOC, which had a "`legitimate interest in avoiding disruption'" at the NEOC. Id. at 165, 582 N.W.2d at 369. We concluded that because the agreement provided a detriment to Myers and a benefit to the NEOC, the agreement was supported by adequate consideration, and that thus, the payment to Myers under the agreement was not an unconstitutional gratuity. Id.
Contrary to the district court's focus on the timing of the payment of the severance benefits in the instant cases, the focus under Neb. Const. art. III, § 19, is more appropriately on when the compensation is granted and whether there is consideration to support the compensation. If adequate consideration supports the severance provisions, then the payments are not gratuities and the severance provisions are enforceable. See id.
The records in the instant cases present evidence of a benefit to the promisor and a detriment to the promisee. The records contain affidavits setting forth, without dispute, that the severance provisions were entered into to enable Elkhorn to retain key employees who, when faced with the possibility of Elkhorn's annexation and the corresponding possibility of losing their jobs, might have sought other employment rather than remain in their positions. The record further reflects that the police and management appellants were only entitled to receive payments under the severance provisions if they agreed to continue their employment and they were still employed by Elkhorn at the time of Elkhorn's annexation and if their positions were effectively eliminated as a result of the annexation. Thus, Elkhorn and, subsequently, Omaha benefited from the appellants' decisions to remain in their positions and to carry out their employment responsibilities up to and until the time that their services were no longer needed, and the police and management appellants suffered the detriment of forgoing new employment opportunities until after their employment was terminated. The evidence further shows that the date it was determined to provide severance was before services were rendered. This record demonstrates that the severance provisions were supported by adequate consideration and did not violate the provisions of Neb. Const. art. III, *149 § 19. See Myers v. Nebraska Equal Opp. Comm., 255 Neb. 156, 582 N.W.2d 362 (1998).
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Hofferber v. City of Hastings, 275 Neb. 503, 747 N.W.2d 389 (2008). The uncontroverted evidence demonstrates that the severance provisions were determined before service was rendered and were supported by adequate consideration. We conclude that the severance provisions did not violate Neb. Const. art. III, § 19, and are valid and enforceable. Omaha, as the moving party that sought to invalidate the agreements, was not entitled to judgment in its favor. The district court's ruling to the contrary was error.

VI. CONCLUSION
In these consolidated appeals, we conclude that the district court correctly exercised subject matter jurisdiction over these cases but that it erred in granting summary judgment in favor of Omaha. We conclude that the severance provisions did not violate Neb. Const. art. III, § 19, and are valid and enforceable. We reverse the district court's grant of summary judgment in favor of Omaha in each case, and we remand the causes for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.