# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3942

_____

Perry Barnes; Matthew Miller;           *
David Rathjen; Michael Schmid;          *
Kurt Denker; Richard Berggen;           *
Patrick McDowell,                       *
                                        *
            Plaintiffs – Appellants,    *
                                        *  Appeal from the United States
       v.                               *  District Court for the
                                        *  District of Nebraska.
City of Omaha, A Municipal              *
Corporation; Michael G. Fahey,          *
Individually And In His Official        *
Capacity; Thomas Warren,                *
Individually And In His Official        *
Capacity; Paul Landow, Individually     *
And In His Official Capacity,           *
                                        *
            Defendants – Appellees.     *

_____

Submitted: June 12, 2008
Filed: July 31, 2009

_____

Before MELLOY, ARNOLD, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

The Plaintiffs appeal the district court's[1] adverse grant of summary judgment dismissing their claim that the Defendants unconstitutionally deprived them of their employment without due process of law. We affirm.

## I.

The parties do not dispute the material facts of this case. The Plaintiffs were police officers for the City of Elkhorn, Nebraska, which Nebraska law classified as a "first class" city. See Neb. Rev. Stat. § 16-101. Nebraska law classifies Defendant City of Omaha, Nebraska, as a "metropolitan class" city. See id. § 14-101. At all times relevant to this action, Defendant Michael G. Fahey was the Mayor of Omaha, Defendant Thomas Warren was Omaha's Chief of Police, and Defendant Paul Landow was Mayor Fahey's Chief of Staff.

Nebraska law permits metropolitan class cities to annex "any adjoining city of the first class having less than ten thousand population." Id. § 14-117. Upon annexing a first class city, Nebraska Revised Statute section 14-118 states that the metropolitan class city "succeed[s] to all the . . . contracts, obligations, and choses in action of every kind held by or belonging to the city . . . annexed or merged with it[] and . . . shall be liable for and recognize, assume, and carry out all valid contracts, obligations and licenses of any city . . . so annexed." Subject to limits irrelevant to this matter, Nebraska Revised Statute section 14-124 also states that "[u]pon such annexation and merger taking effect the terms and tenure of all offices and officers of any city or village so consolidated with the metropolitan city shall terminate and entirely cease." Id. § 14-124. Finally, also subject to limitations irrelevant to this matter, Nebraska law permits first class cities to annex "any contiguous or adjacent

---

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

lands, lots, tracts, streets, or highways as are urban or suburban in character and in such direction as may be deemed proper." Id. § 16-117.

In 2005, Elkhorn's population was less than 10,000. To prevent Omaha from annexing it, Elkhorn attempted to raise its population above 10,000 by passing ordinances to annex its surrounding territories. In response, Omaha passed an ordinance to annex Elkhorn, effective March 24, 2005.

On March 9, 2005, Elkhorn sued Omaha in state court. Elkhorn sought an injunction to prohibit Omaha's enforcement of its annexation ordinance as well as a declaration that Omaha's annexation ordinance was invalid. Omaha counterclaimed and sought an injunction to prevent Elkhorn from enforcing its annexation ordinances and a declaration that Elkhorn's annexation ordinances were invalid. On March 18, 2005, both cities agreed to a mutual injunction preventing them from enforcing their annexation ordinances pending the legal resolution of their dispute. After a bench trial, a state district court found in Omaha's favor but extended the injunction pending Elkhorn's appeal. On January 12, 2007, the Nebraska Supreme Court affirmed the state district court's findings in favor of Omaha and concluded that "Elkhorn ceased to exist as a separate municipality on March 24, 2005, the date that Omaha's annexation ordinance became effective." City of Elkhorn v. City of Omaha, 725 N.W.2d 792, 811 (Neb. 2007).

On March 1, 2007, the state district court entered judgment in favor of Omaha in accordance with the Nebraska Supreme Court's mandate. That same day, Omaha officials began providing written notices to the Plaintiffs informing them that their employment had been terminated. After each Plaintiff received notification, the Plaintiffs requested due process hearings to challenge their terminations. Omaha officials denied the Plaintiffs' requests, however, because they stated that the Plaintiffs had not been Omaha employees and, therefore, were not entitled to hearings.

On March 23, 2007, the Plaintiffs filed this action in federal court. The Plaintiffs allege that the Defendants unconstitutionally deprived them of their employment without due process, entitling them to equitable relief and damages under the Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. The district court dismissed the Plaintiffs claims on summary judgment, and the Plaintiffs appeal.

## II.

"We review de novo the district court's grant of summary judgment, viewing all evidence and reasonable inferences in the light most favorable to the nonmoving party." Habhab v. Hon, 536 F.3d 963, 966 (8th Cir. 2008) (quotation omitted). "If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, we may affirm summary judgment for any reason supported by the record, even if it differs from the rationale of the district court." Id. (internal quotation and alterations omitted).

The Fourteenth Amendment to the U.S. Constitution prohibits state deprivations of property without due process of law,[2] and "[i]t is . . . well settled that municipal ordinances adopted under state authority constitute state action and are within the

---

[2] To the extent that the Plaintiffs rely on the Fifth Amendment, their claims must fail. The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and the Plaintiffs have not alleged that the federal government or a federal action deprived them of property. See Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); Junior Chamber of Commerce of Kansas City, Mo. v. Mo. State Junior Chamber of Commerce, 508 F.2d 1031, 1033 (8th Cir. 1975) (recognizing that a "federal action" is necessary "before there is any deprivation of due process in violation of the fifth amendment").

prohibition of the [Fourteenth Amendment]." Carlson v. California, 310 U.S. 106, 109 n.1 (1940) (quotation omitted). As a threshold matter, plaintiffs alleging that a state deprived them of employment without due process must first demonstrate that they had property interests in their continued employment. See Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). For due process purposes, a plaintiff has a property interest in disputed property when he or she has a "legitimate claim of entitlement" to it. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); see also Bennett v. Watters, 260 F.3d 925, 927 (8th Cir. 2001) (stating, where a terminated police department employee had alleged that a city terminated her without due process, that "[a] property interest arises from a 'legitimate claim of entitlement' to continuing employment" (quoting Roth, 408 U.S. at 577)). A legitimate claim of entitlement stems from "state law or some other 'independent source'" sufficient to establish "'mutually explicit understandings'" of entitlement. Thompson v. Adams, 268 F.3d 609, 611 (8th Cir. 2001) (quoting Perry v. Sindermann, 408 U.S. 593, 601 (1972)).

The Plaintiffs argue that they had a legitimate claim of entitlement to employment with Omaha because, under Nebraska Revised Statute section 14-118, "Omaha automatically assumed ]the Plaintiffs'] employment when it annexed Elkhorn." As Omaha employees, the Plaintiffs contend that a Collective Bargaining Agreement between Omaha and its police officers (the "Omaha CBA") governed their relationship and prohibited Omaha from terminating them except "for cause." Accordingly, the Plaintiffs assert that they had property interests in their positions. See Bennett, 260 F.3d at 927 ("A public employee has a property interest when there are contractual or statutory limitations on the employer's ability to terminate an employee, such as a contractual right to be terminated only for cause." (internal quotation omitted)).

The Defendants assert that the Plaintiffs cannot establish a due process violation because the Plaintiffs had no legitimate claim of entitlement to employment with

Omaha.  They argue that, pursuant to Nebraska Revised Statute section 14-124, the Plaintiffs were Elkhorn "officers" whose positions statutorily "terminate[d] and entirely cease[d]" when Omaha annexed Elkhorn.  Alternatively, the Defendants argue that, pursuant to section 14-118, Omaha at most assumed Elkhorn's employment obligations to the Plaintiffs when it annexed Elkhorn.  As such, they claim that the Plaintiffs' employment with Omaha was subject to a severance provision[3] in a

---

[3] Section 13 of the Elkhorn CBA specifically states:

TERMINATION/SEVERANCE - In the event any action is taken by any state authority or the City of Omaha, Douglas County, or any other political subdivision of the State of Nebraska for the purpose of annexing, consolidating, or merging the City of Elkhorn (hereinafter "City") or any proceedings which would result in the City no longer being an independent political subdivision of the State of Nebraska and which would result in the elimination, termination or substantially changing of the terms and conditions of employment status of law enforcement employees of the City, the employees of the City covered by this agreement shall, subject to the terms and conditions of the Article, be paid compensation equal to fifty-two (52) weeks, including all fringe benefits including insurance, to which the law enforcement employee is entitled when the action occurred; provided, however, that if during the fifty-two (52) week period the employee becomes employed as a law enforcement officer by any political subdivision of the State of Nebraska, the right to the compensation terminates at the commencement of such employment.

. . . .

The provision of this Article shall not apply if no annexation, consolidation or merger occurs which would result in the City ceasing to be an independent political subdivision of the State of Nebraska.

Nothing in this Article shall be interpreted or construed to create any additional employment rights or rights other than expressly set forth in this Article or employment obligations of the City nor shall this Article

-6-

Collective Bargaining Agreement between Elkhorn and its police officers (the "Elkhorn CBA") that prevented the Plaintiffs from possessing any legitimate claim of entitlement to employment with Omaha.

While the parties agree that a finding that the Plaintiffs were "officers" under section 14-124 would resolve this case in the Defendants' favors, we agree with the district court that we need not address that unanswered question of state law to resolve this dispute. In City of Omaha v. City of Elkhorn, 752 N.W.2d 137 (Neb. 2008), the Nebraska Supreme Court expressly recognized that, pursuant to section 14-118, Omaha assumed Elkhorn's contractual obligations to the Plaintiffs when it annexed Elkhorn. Specifically, the court reviewed Omaha's claim that multiple severance provisions in certain Elkhorn employee contracts, including the severance provision in the Elkhorn CBA, were invalid and unenforceable. City of Omaha, 752 N.W.2d at 141–43. Elkhorn and the Fraternal Order of the Police Lodge No. 53—the police union that had negotiated the Elkhorn CBA on the Plaintiffs' behalf—argued that Omaha did not have standing to dispute the validity of the severance provisions because Omaha had not been a party to the relevant contracts. Id. at 144. The Nebraska Supreme Court rejected those arguments and held that, pursuant to section 14-118, "Omaha . . . succeeded to and became liable for the severance

create any expectation of a right to continued employment of a law enforcement employee by the City.

This article shall be binding on any successor, entity, political subdivision of the State of Nebraska or any other political entity which succeeds, annexes, merges or otherwise takes over or replaces the City and any of its functions or duties; provided further, that this Article shall be automatically renewed and incorporated in any collective bargaining agreements or employment contracts between the law enforcement employee and the City until the parties agree to amend or eliminate.

provisions on March 24, 2005, the date Omaha's annexation ordinance became effective." Id. at 144–45, 147. Because Omaha succeeded to Elkhorn's contractual obligations under the Elkhorn CBA, we therefore agree with the Defendants that the Elkhorn CBA, not the Omaha CBA, governed any potential employment relationship that existed between the Plaintiffs and Omaha.[4]

Construing the Elkhorn CBA as a whole and "read[ing] the terms of the agreement 'in their context,'" see Sheet Metal Workers, 255 F.3d at 551(quoting Mastro Plastics Corp., 350 U.S. at 281) (additional quotation omitted), we further agree with the Defendants that the severance provision of the Elkhorn CBA prevented the Plaintiffs from possessing property interests in employment positions with Omaha. By the terms of the severance provision, which is a provision for which the Plaintiffs specifically negotiated, see City of Omaha, 752 N.W.2d at 141–43, it is evident that the parties to the Elkhorn CBA contemplated and accounted for the Plaintiffs' terminations upon Omaha's annexation of Elkhorn. The parties expressly designed

---

[4] In their supplemental brief, the Plaintiffs assert that other provisions of the Elkhorn CBA provided that Elkhorn could only terminate them for cause, making the distinction between the Omaha CBA and the Elkhorn CBA irrelevant. Though the Plaintiffs may be correct that, prior to annexation, Elkhorn only could have terminated them for cause, we believe the more specific severance provision in the Elkhorn CBA governs the circumstances at hand. See Panwitz v. Miller Farm-Home Oil Serv., Inc., 422 N.W.2d 63, 66 (Neb. 1988) ("If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should be generally held to operate as a modification and pro tanto nullification of the former." (quotation omitted)). Moreover, were we to agree with the Plaintiffs' interpretation of the Elkhorn CBA, the Elkhorn CBA would have prohibited Omaha from terminating the Plaintiffs except "for cause" and still would have required Omaha to pay the Plaintiffs severance payments in the event of a termination. The Plaintiffs' interpretation is therefore illogical, fails to interpret the Elkhorn CBA as a whole, and fails to interpret the terms of the Elkhorn CBA in their proper context. See Sheet Metal Workers International Ass'n, Local No. 3 v. Lozier Corp., 255 F.3d at 551 (citing Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 281 (1956)).

the provision to apply only in the event of an "annexation, consolidation or merger" that would cause Elkhorn to cease existing as "an independent political subdivision of the State of Nebraska"; to bind any city that annexed Elkhorn; and, in the event of an annexation, to provide the Plaintiffs with rights to severance payments if they were terminated or "the terms and conditions" of their employment substantially changed. The parties did not, however, reserve the Plaintiffs any rights to continued employment upon an annexation. Rather, in the event of an annexation, the provision specifically limited the Plaintiffs from claiming additional rights to employment apart from those for which the severance provision provided. Although the Plaintiffs now discount that limiting language as "nonsensical and inoperative," the language is specific and clear, and Nebraska law states that "[a] contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." State ex. rel Bruning v. R.J. Reynolds Tobacco Co., 746 N.W.2d 672, 679 (Neb. 2008). For those reasons, we agree with the Plaintiffs' own statement "that the Elkhorn CBA . . . did not, and could not, form the basis of [their] property right claim." Thus, we reject the Plaintiffs' assertion that the Defendants deprived them of property without due process because we find that the Plaintiffs' had no legitimate claim of entitlement to employment with Omaha.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____