Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/03/2017 09:10 AM CDT

- 837 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

Northeast Nebraska Public Power District,
appellee and cross-appellant, v.
Nebraska Public Power District,
appellant and cross-appellee.

___ N.W.2d ___

Filed June 27, 2017.    No. A-16-309.

1. **Contracts: Appeal and Error.** The construction of a contract is a question of law, and is reviewed de novo.
2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
3. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. **Declaratory Judgments.** A declaratory judgment action is ripe for judicial determination if the issue presented is fit for judicial determination and would result in significant harm if review were delayed.
5. **Courts: Judgments: Damages.** A court may proceed to the merits of a case where the issues presented are largely legal in nature, the issue may be resolved without further factual development, or judicial resolution will largely settle the parties' dispute; and significant harm applies to both actual damages, pecuniary or otherwise, and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution.
6. **Pretrial Procedure: Appeal and Error.** On a discovery issue, the district court's ruling is reviewed for an abuse of discretion.
7. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.

- 838 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

8. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

9. **Contracts.** If the terms of a contract are clear, a court may not resort to rules of construction and must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.

10. ____. The fact that the parties suggest opposing meanings of a disputed instrument does not compel the conclusion that the instrument is ambiguous.

11. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

Appeal from the District Court for Wayne County: James G. Kube, Judge. Affirmed.

Kile W. Johnson and Corey J. Wasserburger, of Johnson, Flodman, Guenzel & Widger, and John C. McClure, of Nebraska Public Power District, for appellant.

Steven D. Davidson and David C. Levy, of Baird Holm, L.L.P., for appellee.

Inbody, Riedmann, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Nebraska Public Power District (NPPD) appeals and Northeast Nebraska Public Power District (Northeast) cross-appeals from an order entered by the district court for Wayne County granting summary judgment in favor of Northeast and denying NPPD's motion for summary judgment. On appeal, NPPD argues the district court erred in overruling NPPD's motion to dismiss for lack of subject matter jurisdiction, overruling NPPD's motion to compel, interpreting the relevant contract provisions, failing to find that equitable estoppel did not give rise to a cause of action, and granting summary judgment in favor of Northeast. On cross-appeal, Northeast

- 839 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

preserved its right to relief on its alternative claim alleging promissory estoppel as a matter of law. For the reasons set forth below, we affirm.

## BACKGROUND

Northeast is a political subdivision of the State of Nebraska and a public power district engaged in the distribution of electricity to approximately 8,500 metered accounts in parts of Pierce, Thurston, Wayne, Dixon, and Dakota Counties. Northeast operates approximately 3,000 miles of electric lines and over 100 miles of high-voltage transmission lines in its service area. Northeast is governed by an elected board of directors.

NPPD is a political subdivision of the State of Nebraska and a public power district engaged in the generation and transmission of electricity at wholesale to numerous towns, public power districts, and cooperatives across Nebraska. NPPD is Nebraska's largest wholesale electric utility.

Prior to January 1, 2015, Northeast was a member of the Nebraska Electric Generation and Transmission Cooperative, Inc. (NEG&T). NEG&T is a nonprofit cooperative of more than 25 Nebraska public power districts and nonprofit electric membership corporations, all of whom are wholesale customers of NPPD. NEG&T was formed, in part, to provide a single point of negotiation with NPPD on behalf of its members in order to obtain energy through a single contract between NEG&T and NPPD. As a member of NEG&T, Northeast satisfied all of its demand and energy requirements under a wholesale power agreement with NEG&T, which, in turn, purchased electricity at wholesale from NPPD. Under Northeast's contract with NEG&T, Northeast did not have the right to limit or reduce the amounts of demand and energy it was obligated to purchase under the contract. Northeast had to withdraw from NEG&T if Northeast desired to limit and reduce its purchases of demand and energy requirements in order to purchase demand and energy requirements from

- 840 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

another wholesale provider. Upon withdrawing from NEG&T, Northeast was obligated under the wholesale power contract (WPC) to contract with NPPD for the remainder of the term of the WPC. Once contracted with NPPD under the WPC, Northeast could avail itself of the limit and reduction provisions contained in the WPC.

Northeast engaged an outside consultant to assist with issues regarding its potential transition from NPPD to a new wholesale electricity provider in 2013. There were 77 wholesale customers bound by the same WPC, either through individual contracts with NPPD or through the NEG&T cooperative contract. The WPC was originally implemented with most of those customers on January 1, 2002, for a term of 20 years. The NEG&T member agreement contract stated:

> Beginning January 1, 2008, and thereafter, pursuant to the terms of the Member Agreement, a Member may elect to limit or reduce its purchase of demand and energy from NEG&T; provided, a Member electing to limit or reduce its purchase of demand and energy from NEG&T may only do so upon notice of termination of its Member Agreement. Upon the effective termination date of the Member Agreement, the Member shall enter into an Individual Wholesale Power Contract with NPPD, a copy of which is attached hereto as Exhibit E, for the remainder of the 20-year term of this Contract, which Individual Wholesale Power Contract shall set forth the terms and conditions governing such limitation or reduction and which Individual Wholesale Power Contract shall be the same contract as is offered to other NPPD wholesale customers under similar conditions of service.

The WPC, in turn, provided that until January 1, 2008, the customer must purchase from NPPD the entire amount of demand and energy needed to service its customers. After January 1, 2008, the WPC gave the customer the ability to limit and reduce its purchase of demand and energy from NPPD upon advanced written notice under a specified formula.

- 841 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

Northeast withdrew from NEG&T at the end of 2014 and entered into the WPC with NPPD effective January 1, 2015. Northeast provided notice to NPPD of its intent to limit and reduce its purchases of demand and energy requirements under the WPC when it executed the WPC in January 2015. The WPC limit and reduction provision, which is the provision upon which Northeast requested declaratory relief in this action, stated:

Effective on and after the calendar year commencing January l, 20ll, Customer shall have the right, for any reason and with proper written notice, to reduce the amount of Demand and Energy it purchases from NPPD in any calendar year to levels below the Base Demand and Energy Obligation; provided, such notice(s) of reduction shall be given no earlier than January 1, 2008. Customer can reduce its monthly Demand and Energy obligations from NPPD in any such calendar year by an amount no greater than the product of (a) ten percent (10%) of the Customer's Base Monthly Demand and Energy Obligation, multiplied by (b) the number of years between the effective date of the reduction and either (i) January 1, 2010, or (ii) one year prior to the ending date of a previous reduction, whichever is later; provided, however, in no event shall Customer be allowed to reduce to a level below ten percent (10%) of the Customer's Base Monthly Demand and Energy Obligation prior to completion of the term of this Contract. Notification(s) to reduce purchases of Demand and Energy by thirty percent (30%) or less must be given by Customer to NPPD not less than three (3) calendar years prior to the effective date of such reduction. Notification(s) to reduce purchases of Demand and Energy by more than thirty percent (30%) must be given by Customer to NPPD not less than five (5) calendar years prior to the effective date of such reduction.

- 842 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

In early 2013, Northeast retained its outside consultant to explore alternatives with respect to wholesale power suppliers. He began communicating with NPPD in order to determine the maximum reduction available in the shortest amount of time. In May 2013, NPPD's vice president of customer services communicated to Northeast's outside consultant that he understood the reduction paragraph to allow Northeast, with proper notice, to reduce its demand and energy purchases from NPPD at the rate of 30 percent per year for 3 consecutive years (30/30/30 method).

In June 2013, Northeast's board of directors issued a request for proposals, soliciting proposals from potential suppliers of wholesale power. Northeast sent NPPD a copy of the request for proposals as a prospective bidder. In August 2013, Northeast's general manager was authorized by the board of directors to issue notice to NEG&T of its intent to withdraw from the membership agreement. He issued this notice to NEG&T on October 28.

On November 1, 2013, NPPD communicated to Northeast's outside consultant that after further review, NPPD no longer understood the reduction paragraph to permit the 30/30/30 method of reduction. In late 2013, Northeast executed a purchase agreement with Big Rivers Electric Corporation (BREC) to purchase power at the maximum schedule of reduction from NPPD.

On June 23, 2014, Northeast filed an action for declaratory judgment in the district court. Northeast also filed an action for equitable estoppel to prevent NPPD from prohibiting Northeast from reducing in any manner other than the 30/30/30 method. On July 24, NPPD filed a motion to dismiss on the basis of lack of subject matter jurisdiction. The district court overruled NPPD's motion to dismiss on December 2.

On December 30, 2014, during the pendency of litigation, Northeast and NPPD executed the WPC, which had an effective date of January 1, 2015. Northeast sent formal notice that it intended to limit and reduce its purchase under the

- 843 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

contract and that its preferred means of reduction was the 30/30/30 method.

During discovery, the district court entered a protective order that was stipulated to by both parties. The protective order provided that any material exchanged in the course of discovery and marked "'Confidential'" would be limited in use to the purposes of litigation. Northeast provided NPPD with a redacted copy of its contract with BREC, and removed 13 sections of the agreement. On June 9, 2015, NPPD filed a motion to compel the disclosure of the unredacted document. On August 14, the district court overruled the motion to compel.

Each party filed a motion for summary judgment in June 2015. On January 19, 2016, the district court entered an order granting Northeast's motion for summary judgment, in part, and overruling NPPD's motion for summary judgment. The district court found that the reduction provision in the contract was unambiguous. The court concluded that the 30/30/30 method was the appropriate reduction method. The court declined to reach the promissory estoppel issue, finding it moot because Northeast obtained all the relief it requested on the contract claim. NPPD filed a notice of appeal on March 23.

## ASSIGNMENTS OF ERROR

NPPD argues the district court erred in (1) overruling NPPD's motion to dismiss for lack of subject matter jurisdiction, (2) overruling NPPD's motion to compel, (3) interpreting the relevant contract provisions, (4) failing to find that equitable estoppel did not give rise to a cause of action, and (5) granting summary judgment in favor of Northeast. On cross-appeal, Northeast preserved its right to relief on its alternative claim alleging promissory estoppel as a matter of law.

## STANDARD OF REVIEW

[1-3] The construction of a contract is a question of law, and is reviewed de novo. *Labenz v. Labenz*, 291 Neb. 455,

- 844 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

866 N.W.2d 88 (2015). An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Pittman v. Western Engineering Co.*, 283 Neb. 913, 813 N.W.2d 487 (2012). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

### Motion to Dismiss

NPPD argues that the district court erred in overruling its motion to dismiss for lack of subject matter jurisdiction. NPPD asserts that the district court should have dismissed the case because Northeast "sought an advisory opinion to determine whether its future actions would constitute a breach under a contract that had yet to be executed at the time the declaratory judgment action was filed." Brief for appellant at 15. NPPD argues the case was not, and is not, ripe for judicial review. We find these assertions lack merit.

The Nebraska Supreme Court in *City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137 (2008), adopted a two-step analysis from the U.S. Court of Appeals for the Eighth Circuit to determine whether a declaratory judgment action was ripe. In *Nebraska Public Power Dist. v. MidAmerican Energy*, 234 F.3d 1032 (8th Cir. 2000), NPPD sought declaratory relief regarding the meaning of a contract provision addressing decommissioning payments for a MidAmerican Energy Company (MidAmerican) nuclear power facility. Certain payments were allegedly due only after MidAmerican made a contractual election to extend the time to decommission the facility, the deadline for which had not yet occurred. NPPD asked the court to interpret contractual duties that

- 845 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

would arise only if the election were made. As a result, MidAmerican contended that NPPD's declaratory judgment claim was not ripe, and could not be ripe for adjudication until after the contractual election occurred. *Id.*

[4,5] The Eighth Circuit held that a declaratory judgment action is ripe for judicial determination if the issue presented is fit for judicial determination and would result in significant harm if review were delayed. The first prong of the test, fitness for judicial determination, goes to a court's ability to visit an issue. *Id.* A court may proceed to the merits of a case where the issues presented are largely legal in nature, the issue may be resolved without further factual development, or judicial resolution will largely settle the parties' dispute; and significant harm applies to both actual damages, pecuniary or otherwise, and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution. *Id.* A party need not wait for actual harm to occur; however, both the immediacy and the size of the threatened harm must be significant. *Id.* A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree. *Id.*

The court in *MidAmerican Energy* found the case ripe despite the fact that the triggering event for MidAmerican's payment or nonpayment remained in the future. The court noted that the case presented primarily a legal question of contract interpretation about which the facts were already established, the resolution of which would largely resolve the dispute. *Id.* Moreover, delay would cause harmful uncertainty that would require NPPD to gamble millions of dollars on an uncertain legal foundation. *Id.* The insecurity caused by the parties' contending interpretations of the contract worked a definite, tangible, and significant future harm, and even worked as a present harm on their ability to plan and conduct business operations. *Id.* Finally, the court found it significant that the case would not change if the court waited for the future contractual deadline to pass. The parties were 3 years from the decommissioning decision. If the court were to

- 846 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

withhold adjudication, the parties would have returned shortly, making precisely the same arguments, with nary a scintilla of additional relevant evidence. *Id.*

The present case presents an issue of contract interpretation where all relevant facts and contingencies have already occurred and the resolution of which will end the dispute. The current record confirms that Northeast has terminated the WPC with NEG&T, has entered into the required direct WPC with NPPD, and has provided the required advance contractual notice of its intention to limit and reduce its purchases. Northeast's first reduction will occur on January l, 2018. All triggering events that define the legal issues and give context to the interpretation of the contract have already taken place. The contract is in force, requisite notices to limit and reduce have been given, and there is a clear and defined dispute about the parties' rights in light of that notice. There is no remaining factual uncertainty and no future event yet to take place other than implementation of decisions already made. As a result, the legal issues of contract interpretation raised in this case are fit for determination now.

There is both a present significant potential harm, a nearly $1 million difference between the proposed reduction methods, and future uncertainty from an operational standpoint for Northeast. Absent resolution, Northeast will not know from whom, or in what amount, it will be purchasing demand and energy for its customers over a multiyear period. Logistical and business planning regarding Northeast's operations would be significantly impacted. If this case were dismissed, the parties would return with the same contract provision dispute and nearly the same evidence. This case is ripe for review, and the district court did not err in denying NPPD's motion to dismiss.

## MOTION TO COMPEL

NPPD argues the district court erred in denying its motion to compel an unredacted version of the wholesale power

- 847 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

contract between Northeast and BREC. NPPD asserts that
without an opportunity to verify or contradict Northeast's
claims with respect to the cost difference between the BREC
and NPPD contracts, the district court deprived NPPD of
important evidence which could have been dispositive in this
case. We find these assertions lack merit.

[6] On a discovery issue, the district court's ruling is
reviewed for an abuse of discretion. See *Roskop Dairy v. GEA
Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015). It is dif-
ficult to show that a party has been prejudiced by a discovery
order, or that the question is not moot; and the harmless error
doctrine, together with the broad discretion the discovery rules
vest in the trial court, will bar reversal save under very unusual
circumstances. *Id.*

The district court determined that whatever reduction
method utilized involves a calculation of a percentage of
energy purchase reduction under the contract between NPPD
and Northeast. The court noted that there was some relevance
in reviewing the contract between Northeast and BREC for
establishing the materiality of contractual aspects which would
help determine the ultimate costs to Northeast. However, the
court determined that the potential harm of disclosing BREC's
contract to NPPD, one of its business competitors, outweighed
the purpose for which NPPD sought the unredacted contract.
The court determined that the redacted contract disclosed suf-
ficient information in order for NPPD to defend its position
in this case. After a review of the record, we find the district
court did not abuse its discretion in denying NPPD's motion
to compel.

### Contract Interpretation

NPPD argues the district court erred in its contract inter-
pretation finding that the 30/30/30 method was consistent
with the plain language of the WPC. NPPD asserts that the
unambiguous language of the WPC only allows successive
reductions after the first year at a maximum of 10 percent per

- 848 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

year (30/10/10 method). Upon our review, we find this assertion lacks merit.

[7-11] The meaning of a contract and whether a contract is ambiguous are questions of law. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Kasel v. Union Pacific R.R. Co.*, 291 Neb. 226, 865 N.W.2d 734 (2015). If the terms of a contract are clear, a court may not resort to rules of construction and must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them. See *id.* The fact that the parties suggest opposing meanings of a disputed instrument does not compel the conclusion that the instrument is ambiguous. *Id.* When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Facilities Cost Mgmt. Group, supra*.

There is no question that the contract language in dispute is unnecessarily complicated. However, we find that there is only one reasonable interpretation of the contract. We, therefore, find that the contract is not ambiguous. According clear terms their plain and ordinary meaning, we find that the reduction provision at issue allows for the 30/30/30 method, commencing on January 1, 2018.

First, the parties agree that the maximum potential reduction under the WPC is 90 percent of the base obligation. The parties also agree that 3 years' advance notice must be given to implement a reduction of 30 percent or less and that 5 years' advance notice must be given to implement a reduction of more than 30 percent. Finally, the parties agree that Northeast can reduce its demand by 30 percent in its first year of reduction. The parties disagree on whether subsection (i) or subsection (ii) applies to the reductions proposed for 2019 and 2020. NPPD argues that subsection (i) is inapplicable after the initial reduction, so subsection (ii) must apply.

- 849 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

NPPD argues that the phrase "(ii) one year prior to the ending date of a previous reduction, whichever is later," should be fairly read to mean "'ending date of a previous reduction *level*' within the context of the reduction paragraph as a whole," brief for appellant at 28. Therefore, after Northeast's initial reduction of 30 percent of its demand, the subsequent reductions would be limited to 10 percent multiplied by the ending date of the previous reduction, which was 1 year for each subsequent reduction that Northeast had given advance notice. This is how NPPD arrived at its 30/10/10 method. In contrast, Northeast argues, and the district court found, that there was not an "ending date of a previous reduction," therefore the limiting provision of subsection (ii) is inapplicable and subsection (i) applies.

Affording the plain and ordinary meaning as an ordinary or reasonable person would understand it, the phrase "(ii) one year prior to the ending date of a previous reduction, whichever is later," we find that there is no "ending date of a previous reduction." Northeast provided notice of continuous, cumulative, and maximum reductions of 30 percent annually to the maximum reduction level of 90 percent of its monthly base demand and obligation under the WPC. The district court found: "The ending of previous reduction cannot mean that the reduction continues to exist. To 'end' means to terminate; a cessation; a point beyond which something does not continue, or which ceases to exist." We agree with the district court's conclusion given the context of this contract that the ordinary meaning of the term "ending date" is the date on which a previous reduction ends. Here, the proposed reductions will not end. They will each remain in place through the duration of the contract's term, which expires on January 1, 2022. The original 30-percent reduction that begins in 2018 will remain in place during 2019. Each additional reduction will be capped at 30 percent, and the total will be capped at 90 percent per the reduction provision. Since there was no "ending date of a previous reduction," subsection (ii) does not

- 850 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
NORTHEAST NEB. PUB. POWER DIST. v. NEBRASKA PUB. POWER DIST.
Cite as 24 Neb. App. 837

come into effect, and thus subsection (i) was applicable for every notice. However, the notice requirement of the contract capped each years' subsequent reduction to a 30-percent total, and at 90 percent from January 1, 2020, until the expiration of the WPC. Upon our review, we find that the district court did not err in its interpretation of the contract provisions and, therefore, did not err in granting summary judgment in favor of Northeast.

### Remaining Assigned Errors

On cross-appeal, Northeast preserved its right to relief on its alternative claim alleging promissory estoppel as a matter of law. NPPD argues that the district court should have found that equitable estoppel did not give rise to a cause of action, but can serve only as a defense.

The district court found that the equitable estoppel issue was moot, since it granted summary judgment on the contract claim to Northeast. We agree. Our findings above render this issue contained in the remaining assigned errors moot.

### CONCLUSION

Upon our review, we find the district court did not err in overruling NPPD's motion to dismiss for lack of subject matter jurisdiction. The district court did not err in overruling NPPD's motion to compel. Additionally, the district court did not err in its interpretation of the relevant contract provisions. The district court did not err in granting summary judgment in favor of Northeast. Finally, our opinion regarding the contract's meaning renders moot the remaining causes of action.

Affirmed.